UNITED STATES of America,
Plaintiff—Appellee,

v.

Earl Nicholas WAITE, Defendant—
Appellant.

No. 00–30253.
D.C. No. CR–99–00040–BLW.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 15, 2001.

Decided June 29, 2001.

Before B. FLETCHER, BRUNETTI, and FISHER, Circuit Judges.

## MEMORANDUM *

### BACKGROUND

In 1998 the United States Forest Ser-

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Cir. R. 36–3.

vice began investigating the defendant-appellant, Earl Waite, following reports that Waite was accumulating several large diameter, fire-killed Douglas fir logs on his property near Challis, Idaho. These reports led Forest Service agents to suspect that Waite was illegally logging the wood from an area called Rankin Creek **, which was closed to fuelwood cutting. In the fall of 1998, the Forest Service executed a search warrant at the defendant's property. Forty-eight cords of wood, consisting primarily of large diameter Douglas fir, were seized by Forest Service agents. Other wood found on Waite's property was not seized.

Waite was indicted on May 5, 1999. The superseding indictment charged Waite with one count under 18 U.S.C. § 1361, for willfully injuring and committing depredation against property of the Department of Agriculture and thereby causing damage in excess of $1000; one count under 18 U.S.C. § 641, for willfully and knowingly receiving, concealing and retaining property of the United States, valued in excess of $1000, with the intent to convert that property to his own use or gain; and two counts under 18 U.S.C. § 1623, for perjury before a grand jury.

Waite pled not guilty to all counts and proceeded to a jury trial. Waite's defense at trial was that he did not cut any wood from Rankin Creek. Rather, he argued that although some of the wood on his property may have come from Rankin Creek, it was cut and placed there by some one other than himself. The remaining seized wood, he argued at trial, came from areas other than Rankin Creek. The jury returned a verdict of guilty on all four counts of the indictment. Waite filed an untimely motion for acquittal or a new trial and the motion was dismissed by the dis-

trict court on the basis of timeliness. The district court sentenced Waite to an 18–month term of incarceration. Waite timely appealed and filed a motion for release from detention pending appeal, which the district court denied. On appeal, Waite challenges his conviction and the district court's denial of his release pending appeal. Our jurisdiction is pursuant to 28 U.S.C. § 1291. We affirm.

## DISCUSSION

### I. Sufficiency of the Evidence

■ Waite argues on appeal, with respect to several elements of §§ 641 and 1361, that the government presented insufficient evidence to support the jury's findings of guilt. Waite failed to file a timely motion of acquittal with the district court. Thus, his evidence sufficiency arguments are reviewed for plain error. *United States v. Yossunthorn,* 167 F.3d 1267, 1270 n. 4 (9th Cir.1999).

#### A. Government Property

■ Both statutes of conviction require the government to prove that the property in question belongs to the United States or an agency or department thereof. Waite contends that there was insufficient evidence introduced to establish that all of the wood on his property came from Rankin Creek. Thus, while some of it may have been government property, not all of it was. The following substantial evidence was introduced: testimony from Forest Service employees showed that Waite was accumulating logs on his property that had characteristics matching stumps recently cut in the area of Rankin Creek closed to fuelwood cutting; expert testimony that wood on Waite's property came from Ran-

** The area is the Rankin Creek Drainage of the Salmon–Challis National Forest, Custer County, Idaho.

kin Creek; testimony at trial that Rankin Creek was the only source for large fire-killed Douglas fir trees in sizeable quantity; testimony from government agents that the entire log pile seized from Waite's property had similar characteristics and appeared to be large, fire-killed Douglas fir trees; testimony from a witness that Waite said he obtained the wood next to where he was building a road in Yankee Fork and evidence that this road was in the area of Rankin Creek closed to fuelwood cutting. Although at trial Waite's defense attempted to challenge this evidence, the government responded by presenting impeachment evidence that undercut the testimony of Waite's witnesses. There is sufficient evidence in the record to support the jury's finding that all of the seized wood was government property impermissibly taken from the Rankin Creek area.

## B. Mens Rea

■ Next, Waite contends that the government failed to meet its burden of proof that he possessed the mens rea required by the statutes of conviction. Although at trial, Waite's defense was that the seized wood did not come from Rankin Creek at all, on appeal he argues that, even if it did, the government did not establish that he knew the wood was United States property because the Forest Service had not sufficiently delineated the boundary between closed and open areas.

Both §§ 641 and 1361 require the government to establish that Waite had knowledge of the unlawfulness of his conduct. *United States v. Derington*, 229 F.3d 1243, 1249 (9th Cir.2000). Thus, the question on appeal is whether, under review for plain error, there is evidence in the record establishing a basis for the jury to find that Waite knew he was doing something unlawful in taking this wood.

The evidence here satisfies the "extraordinarily deferential" plain error review. The following is a list of some of the evidence presented at trial: testimony from Forest Service employees showed that Waite was accumulating logs on his property that had characteristics matching stumps recently cut in the area of Rankin Creek closed to fuelwood cutting; expert testimony that the wood on Waite's property came from Rankin Creek; testimony from a witness that Waite said he obtained the wood next to where he was building a road in Yankee Fork and evidence that this road was in the area of Rankin Creek closed to fuelwood cutting; evidence introduced at trial indicating that Waite approached one of the government's witnesses and called him a "snitch"; testimony that when asked about where he got the timber, Waite responded, "no one would ever know where that wood came from"; testimony that when asked by an acquaintance about the theft investigation, Waite responded that the Forest Service investigator "would never catch him"; Waite's grand jury testimony, which was read into evidence at trial, that Waite knew fuelwood cutting was prohibited in Rankin Creek; evidence that Waite had received a fuelwood permit and that on the permit map the area of Rankin Creek from which the wood in question was cut (section 31) was clearly marked as closed to fuelwood cutting; and testimony from others that they could tell from the map where section 31 was on the ground and that section 31 was closed to fuelwood cutting.

Waite's argument on appeal is best understood to imply that there was only one way the government could affirmatively meet its burden of establishing that he had the requisite knowledge and intent required by the statutes: the property boundaries of off-limit areas had to be clearly delineated on the ground. This is

simply inaccurate as there are several ways that the government can and did establish that Waite knew his conduct was unlawful. Had Waite argued that he cut wood from section 31 mistakenly thinking that it was in an open area, his reliance upon unclear boundary markings might have had some sway. No such "mistake of fact" argument was presented at trial, nor urged on appeal. We therefore find Waite's argument to be without merit.

### C. Property Damage Value

■ To prove felony violations under both § 641 and § 1361, the government had to establish that the value of the stolen property exceeded $1000. The government may not use value added to the property by the defendant, but may only use evidence of the property's value at the time that it was stolen. *United States v. Senchenko,* 133 F.3d 1153, 1158 (9th Cir. 1998).

The government's valuation testimony at trial came from a forest service employee expert. The expert testified that upon her review of five timber sales in the last four years involving large diameter, fire-killed trees still standing in the forest, the average bid price per cord was $27. The government's expert also testified that the condition and quality of the timber in the five timber sales was comparable to that of the timber seized from Waite.

On appeal, Waite contends that this value is improper because it includes value added; namely the cost of accessing and retrieving the wood. Waite, relying on *United States v. Seaman,* 18 F.3d 649 (9th Cir.1994), argues that because the Rankin Creek wood was not commercially viable enough for the government to retrieve, the proper value should have been $5 per cord, which is the cost per cord of a personal use fuelwood cutting permit.

*Seamen* is distinguishable from this case as it involved processed versus un-processed wood. In *Seamen,* other than the $5 per cord permit value entered into evidence by the defendant, there was no evidence offered by the government for unprocessed wood. In contrast, the government in this case offered testimony of comparable standing wood sales of unprocessed wood. Waite's only argument is that the cost of accessing and retrieving the timber in this case added value to the otherwise commercially infeasible timber. We have previously squarely rejected this argument. *United States v. Campbell,* 42 F.3d 1199, 1205 (9th Cir.1994) ("We do not subtract the costs of pulling off the caper when we calculate the value of stolen property. Although being cut and carted away is surely a significant event from the perspective of a tree, it is not an economically significant event under *Seaman.* *Seaman* contemplates a commercial modification of the product stolen.").

The expert testimony of comparable timber sales offered by the government is sufficient to support the jury finding of a $27 per cord value. This was not plain error.

### II. Jury Instruction

Waite argues that the district court erred by failing to give jury instructions he had proposed relating to his perjury charges and an alibi defense. Although Waite proposed these instruction to the court, he failed to object to the district court's actual instructions. Where a defendant fails to object to the district court's instructions, review is for plain error. *Jones v. United States,* 527 U.S. 373, 388, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999).

■ We first address the district court's failure to instruct the jury on an alibi defense. Waite did not present evidence that he was not in the Rankin Creek area during the relevant period charged in the

indictment. Rather he argued that he did not cut the seized wood in Rankin Creek or that it had been cut and placed on his property by someone else. These are not facts supporting an alibi defense. A defendant is not entitled to defense instructions that lacks sufficient factual foundation. *United States v. Solomon,* 825 F.2d 1292, 1295 (9th Cir.1987).

Waite also challenges the district court's perjury instruction. Waite did not object to the district court's failure to instruct the jury as to this perjury defense. And once again our review is therefore for plain error.

■ The district court's perjury instruction, although it did not include the requested defense instruction, is the Ninth Circuit Model Instruction and adequately covers the elements of perjury. The defendant's proposed defense instruction pertaining to ambiguity and technical truthfulness were not supported factually by his defense. Therefore, the district court did not commit error in declining to give the instruction. *See Solomon,* 825 F.2d at 1295.

### III. Due Process Arguments

Waite argues for the first time on appeal that his due process rights were violated during the trial because he alleges the indictment against him was obtained using perjured testimony and because the government engaged in vindictive prosecution. Because these issues are raised for the first time on appeal, we again review for plain error.

■ Knowing use of perjured testimony by the government constitutes a due process violation. *See United States v. La-Page,* 231 F.3d 488 (9th Cir.2000). Waite argues that Special Agent Green committed perjury before a grand jury when, in support of the indictment against Waite, Green stated in an affidavit that "Rankin Creek is closed to all wood cutting."

Waite argues that this is false because there are some open areas in Rankin Creek where wood cutting is permitted.

■ As a preliminary matter, it is unclear whether the statement is actually false or just ambiguous. Although there are apparently some areas of Rankin Creek that are open to wood cutting, the area of Rankin Creek in issue in the case (section 31) was closed to all wood cutting. Thus there may simply be an ambiguity in Agent Green's statement. Even assuming, arguendo, that the statement was false and that Agent Green knew it was false, it was neither material nor prejudicial. Waite himself admitted that he knew that there was no wood cutting permitted in section 31 of the Rankin Creek area and his defense was that the seized wood that he cut did not come from Rankin Creek.

■ Waite also argues that he was prosecuted vindictively in violation of his due process rights. Waite bases this claim on the fact that upon earlier violations charged by Agent Green, Waite was required only to pay court costs. Waite claims that this upset Green and led to a vindictive prosecution. Furthermore, Waite argues that the government's conduct was outrageous because only Waite was investigated and prosecuted in this case, despite the fact that there was evidence implicating others in illegal logging in the same area. Waite's argument lacks merit.

■ A prosecutor violates due process when she brings additional charges solely to punish a defendant for exercising a constitutional or statutory right. *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *United States v. Noushfar,* 78 F.3d 1442, 1146 (9th Cir.1996). Waite has offered no evidence nor plausible allegation that additional charges were filed against him based on

his having exercised a constitutional or statutory right. Nor has Waite alleged facts that approach the high standard of outrageous conduct. *See United States v. Garza–Juarez,* 992 F.2d 896, 904 (9th Cir. 1993) (finding that an indictment should be dismissed "only when the government's conduct is so grossly shocking and so outrageous as to violate the universal sense of justice").

### IV.  Release Pending Appeal

 Finally, Waite argues that the district court abused its discretion by failing to grant his request that he should be released from custody pending appeal. Waite's argument on appeal is simply that he established that he posed no danger of fleeing and does not pose a danger to the community.

The basis of the district court's denial of Waite's request for release pending appeal was that Waite had not established that his appeal would raise a substantial question of law or fact. This was a proper basis for the district court to deny Waite's request. *See United States v. Handy,* 761 F.2d 1279, 1283 (9th Cir.1985). Waite does not argue on appeal that this finding was in error. Nor could he. We therefore find no abuse of discretion.

AFFIRMED.

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.