32 P.3d 44

Wayne HULLETT, individually and as Trustee of WEH Trust U/A 12/6/90, Plaintiff–Appellant,

v.

Mr. and Mrs. George COUSIN, as Trustees for Cousin Corporation Pension Plan and Trust, CPI of Florida Profit Sharing Plan, Numo Investment Company, Robert W. Fremont, Dr. Jerome Theis, as Trustee for Tri–County Clinic, Inc., Profit Sharing Plan, Anthony Barbera, as Trustee for BC and L Pension Plan, Richard N. Gold, as Trustee for R.N. Gold and Company, Inc., Pension, Professional Financial Management, Commercial Bank–Texas, as Custodian for Eloise Payne IRA Account, Dr. Leo Herber, Raymond James and Associates, as Custodian for Robert L. Thompson IRA Account, Robert J. and Martine M. Gregory, as Trustees for the Gregory Family Trust, Resources Trust Company, as Trustees of Robert W. Fremont IRA, Defendants–Appellees.

No. 1 CA–CV 00–0550.

Court of Appeals of Arizona, Division 1, Department B.

Oct. 2, 2001.

---

Warnicke & Littler, P.L.C. by Ronald E. Warnicke, Robert C. Warnicke, Phoenix, for Plaintiff–Appellant.

Broening Oberg Woods Wilson & Cass, P.C. by Lori B. Kirsch–Goodwin, Donald Wilson, Jr., Phoenix, for Defendants–Appellees Cousin Corporation Pension Plan & Trust, Robert W. Fremont, Resources Trust Company as Trustee for Robert W. Fremont IRA, CPI of Florida Profit Sharing Plan, Estate of Eloise Payne and Dr. Leo Herber.

Dr. Jerome Theis, Kansas City, MO, In Propria Persona.

## OPINION

NOYES, Judge

¶ 1 After a limited partnership sold its only asset, an apartment complex, it distributed the net proceeds to its general and limited partners and was deemed dissolved. A creditor later sued the limited partnership and its general partner for tort claims related to the apartment complex—claims that arose before the limited partnership dissolved and about which the limited partners had no notice. The creditor obtained a default judgment against both the partnership and the general partner, but the judgment was uncollectible because those parties were insolvent. The creditor then sued the limited partners, arguing that the limited partnership's transfer of assets to them was voidable as fraudulent pursuant to Arizona Revised Statutes ("A.R.S.") sections 44–1004(A)(1) (1994) [1] and

---

1. Based on 7A Uniform Laws Annotated, Master Edition, Uniform Fraudulent Transfer Act ("UFTA") § 4.

44–1005 (1994).[2] The trial court granted summary judgment to the limited partners and the creditor appealed. We reverse and remand with directions to grant summary judgment to Appellant, the creditor.

¶ 2 The appeal raises several issues, but we need discuss only two, which are stated as follows and answered with a "No":

1. Whether a creditor's claim founded on events that predated a debtor's challenged transfer can be considered on the question whether the debtor was "insolvent" under § 44–1005 at the time of the transfer only if the debtor had notice of the claim at or before the transfer; and

2. Whether a partnership's transfer to limited partners "satisfied" "an antecedent debt" owed to them by the partnership under § 44–1003(A) and thereby caused the partnership to "receive[ ] a reasonably equivalent value in exchange for the transfer" under § 44–1005.

¶ 3 The creditor is Wayne Hullett ("Appellant") and the debtor is Suncrest Villa Associates Limited Partnership ("Suncrest"). Suncrest was formed in 1983, with Clifton Investment Company and Roger J. Clifton as general partners and Appellees as limited partners. Suncrest was funded with capital contributions from its general and limited partners. Suncrest bought the Suncrest Villa Apartments and, in April 1989, sold it to Appellant for $1.375 million, consisting of $250,000 cash and a promissory note for $1.125 million secured by a deed of trust.

¶ 4 Appellant failed to keep up with the payments, and, in April 1994, Suncrest's trustee recorded a notice of trustee's sale for the apartments. On October 7, 1994, however, and with Suncrest's consent, Appellant sold the apartments to a "distress buyer," and Suncrest accepted a discounted payoff on Appellant's note. Under the terms of the limited partnership agreement, Suncrest was to dissolve upon conversion of all its assets, including notes receivable, to cash. That contingency having occurred, Suncrest, on October 25, 1994, distributed all assets to its general and limited partners and was deemed dissolved.

¶ 5 In December 1995, Appellant sued the partnership (Suncrest) and the general partner (Clifton) on grounds that they had caused incorrect information to be supplied to Appellant concerning expenses and net operating income of the apartments. These defendants were properly served but failed to file an answer. (The limited partners were not named defendants in this lawsuit.) In November 1996, Appellant obtained a $500,000 default judgment against Clifton and Suncrest, jointly and severally. The judgment was uncollectible, however, for those parties were insolvent.

¶ 6 On October 23, 1998, not quite four years after the partnership dissolved, Appellant sued the limited partners, alleging that Suncrest had received nothing of value for its transfer to the limited partners and was either insolvent at the time of the transfer or became insolvent as a result of the transfer. The complaint sought judgment against each limited partner for the amount received by that partner from Suncrest, up to a total amount sufficient to satisfy Appellant's judgment against the partnership and the general partner.

¶ 7 Appellees moved for and were granted summary judgment.[3] The trial court later denied Appellant's motion for reconsideration and cross-motion for summary judgment, and

---

2. Based on UFTA § 5.

3. The trial court reasoned:

> The Court determines as a matter of law that Plaintiff has not sufficiently shown that there are any genuine issues of material fact that would support his claim under Arizona's version of the Uniform Fraudulent Transfers Act, A.R.S. §§ 44–1001, et seq.
>
> These moving defendants, as limited partners, received the questioned distributions upon the statutory dissolution and liquidation of the limited partnership. The transferred distribution was in exchange for the partnership's legal obligation to return capital and profit. There is no evidence that these defendants had any intent, actual or constructive, to defraud, hinder or delay any creditor. In fact, there is no evidence that these defendants took their distributions in anything other than good faith. There is no evidence that the limited partnership was insolvent at the time of distribution; it had no outstanding liabilities and no notice of any claims or debts at the time of dissolution. Plaintiff's claim was not raised until fourteen months after the dissolution.

entered a final order in accordance with its rulings. Appellant timely appealed. We have appellate jurisdiction under A.R.S. § 12–2101(B) (1994).

¶ 8 "When the material facts are undisputed, the role of this Court is to determine whether the trial court correctly applied the substantive law to the facts." *Brink Elec. Constr. Co. v. Ariz. Dep't of Revenue,* 184 Ariz. 354, 358, 909 P.2d 421, 425 (App.1995). Statutory interpretation turns on issues of law, which this court reviews *de novo. See Wersch v. Radnor/Landgrant,* 192 Ariz. 99, 100–01, 961 P.2d 1047, 1048–49 (App.1997).

¶ 9 Arizona Revised Statutes § 44–1005 provides:

A transfer made ... by a debtor is fraudulent[4] as to a creditor whose claim arose before the transfer was made ... if the debtor made the transfer ... without receiving a reasonably equivalent value in exchange for the transfer ... and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer....

The relevant definition of "insolvent" is provided by § 44–1002(B), as follows:

A partnership is insolvent under subsection A if the sum of the partnership's debts is greater than the aggregate, at a fair valuation, of all of the partnership's assets and the sum of the excess of the value of each general partner's[5] nonpartnership assets over the partner's nonpartnership debts.

¶ 10 Appellees point out that under § 44–1001, "debt" means "liability on a claim," and a "claim" is

a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

Appellees argue that no "claim" of Appellant "arose before the transfer" within § 44–1005 because Appellant had no "right to payment" by Suncrest until well after Suncrest distributed all its assets to its general and limited partners. Appellees urge:

The statute does not provide, as the Plaintiff has suggested, a right to payment arising out of facts which may give rise to an unasserted cause of action or a "potential" claim, without notice of same. Nor is a potential claim or cause of action ... the equivalent of a "contingent" claim.

. . . .

... The Court cannot impose clairvoyance on the part of the transferor and transferee to discern that a dissatisfied buyer may struggle financially for any number of reasons, bring an undefended cause of action based on alleged misrepresentations and assign a value to a wholly speculative future occurrence.

The trial court was persuaded by this argument, for it found that Appellant did not raise his "claim" until fourteen months after Suncrest dissolved, and, further, that because Suncrest had no outstanding liabilities and no notice of claims or debts at the time of its dissolution, no evidence existed that it was "insolvent" at that time. We conclude that the statutes require a different analysis and result. Under the statutory definition, a "right to payment" qualifies as a "claim" even if it has not been reduced to judgment and is unliquidated, contingent, unmatured, and disputed. A.R.S. § 44–1001(2).

---

4. A creditor who establishes that his debtor's transfer was "fraudulent" may garnish the transferee, avoid the transfer to the extent necessary to satisfy his claim against the debtor, seek a provisional remedy (such as attachment) against the transferred asset, seek to freeze further disposition of the asset, obtain the appointment of a receiver, and obtain such other relief as the circumstances may require. A.R.S. § 44–1007(A). If the creditor has obtained a judgment on his claim, he may also seek leave of court to execute on the transferred asset or its proceeds. A.R.S. § 44–1007(B).

5. The limited partners have never argued that Appellant would be unable to establish Suncrest's insolvency at the time of its distribution of assets because he failed to present adequate information about the assets and liabilities of Suncrest's general partners. The limited partners focus only on their contention that Appellant's "claim" did not arise before the transfer, and indeed argue that the general partners' solvency was irrelevant. On the question of Suncrest's insolvency, we therefore consider only limited partnership debts and assets.

¶ 11 In analyzing Arizona statutes based on the UFTA, we find some guidance in other jurisdictions having similar statutes. For purposes of determining "insolvency" under the UFTA, "liability" on a statutory or common law tort claim against a debtor arises upon commission of the acts on which the claim is founded, regardless of whether the claim was adjudicated, liquidated, or even asserted by the time the challenged transfer was made. *See In re Martin,* 145 B.R. 933, 949 (Bankr.N.D.Ill.1992) (stating that asserted and unasserted contingent liabilities based on debtor's actions before date of challenged transfer and adjudicated after that date were liabilities of debtor as of date of transfer and are considered on solvency question if there is a likelihood that the contingency will occur); *In re Omni Mech. Contractors, Inc.,* 114 B.R. 518, 531 (Bankr.E.D.Tenn.1990) (stating that asserted and unasserted contingent liabilities must be estimated and considered in evaluating debtor's solvency); *cf. Sands v. New Age Family P'ship, Ltd.,* 897 P.2d 917, 921 (Colo.App.1995) (finding that a claim against a debtor for reimbursement of attorneys' fees came into existence when fees were incurred); *Central States, Southeast & Southwest Areas Pension Fund v. Minneapolis Van & Warehouse Co.,* 764 F.Supp. 1289, 1296 (N.D.Ill.1991) (stating that under "trust fund" provisions of ERISA analogous to those of UFTA, an unknown claim against limited partnership that arose upon dissolution and was later discovered and asserted had to be considered in determining limited partnership's solvency at time of dissolution).

¶ 12 An alleged lack of notice to the debtor about an existing, unasserted claim may be relevant to the defense provided by § 44–1008(A)(1) for transfers to "a person who took in good faith and for a reasonably equivalent value." But that defense applies only to claims under § 44–1004(A)(1), which seek to avoid transfers made with intent to hinder, delay, or defraud any creditor; that defense does not apply to a § 44–1005 claim.

¶ 13 The trial court also based its ruling for Appellees on the alternative theory that Suncrest's distribution was "in exchange for the partnership's legal obligation to return capital and profit" to Appellees. The court implicitly concluded that Suncrest therefore "received a reasonably equivalent value in exchange for the transfer" within A.R.S. § 44–1005. Here, again, we conclude that the statutes require a different result.

¶ 14 Section 44–1003(A) provides, in relevant part: "Value is given for a transfer ... if, in exchange for the transfer ..., property is transferred or an antecedent debt is secured or satisfied ...." Appellees argue that Suncrest had a legal obligation under the limited partnership agreement to return to them the value of their partnership interests upon dissolution of the partnership, and that this obligation qualified as a partner ship "antecedent debt" to the limited partners within § 44–1003(A). We disagree.

¶ 15 A limited partner's capital contribution is not a debt of the limited partnership; it is an asset. *See generally* A.R.S. §§ 29–329, –330 (1998); *Buncher Co. v. Official Comm. of Unsecured Creditors of Gen-Farm Ltd. P'ship IV,* 229 F.3d 245, 251–52 (3d Cir.2000); *accord In re Riverside–Linden Inv. Co.,* 925 F.2d 320, 323 (9th Cir.1991) (stating that a partnership interest is not a debt of or claim against the partnership); *In re Agric. Research & Tech. Group, Inc.,* 916 F.2d 528, 540 (9th Cir.1990) (ruling that distribution on account of limited partnership interest was voidable fraudulent transfer in hands of limited partner); *In re Pine Lake Village Apt. Co.,* 21 B.R. 478, 480 (Bankr. S.D.N.Y.1982) (explaining that limited partners' equity interests are not claims against partnership for which limited partners may assert right to payment); *In re Thunderdome Houston Ltd. P'ship,* 2000 WL 889846 (Bankr.N.D.Ill.2000) (finding that distributions on account of limited partnership interests were not made for reasonably equivalent value and were voidable fraudulent transfers under UFTA).

> An ownership interest is not a debt of the partnership. Partners own the partnership subject to the profits or losses. Creditors, however, hold claims regardless of the performance of the partnership business. Thus, an ownership interest is not a claim against the partnership.

*Riverside–Linden,* 925 F.2d at 323 (quoting *In re Riverside–Linden Inv. Co.,* 99 B.R. 439, 444 (B.A.P. 9th Cir.1989)).

¶ 16 Although Suncrest was a separate legal entity, the general and limited partners were not creditors but owners. The limited partnership agreement was not between the partners and Suncrest; it was between the general and limited partners. The transfers Suncrest made to the limited partners were therefore not payments on antecedent debts by an entity separate from those to whom the debts were owed. The transfers instead were a division and distribution of an asset pool among the owners in accordance with their prior agreement.

¶ 17 A limited partner is *not* entitled to distribution from a limited partnership to the extent that it would cause the liabilities of the limited partnership, other than those to partners on account of their partnership interests, to exceed the fair value of the limited partnership's assets. A.R.S. § 29–337 (1998). Suncrest's final distributions to Appellees un-disputably failed to pass this test. Suncrest's final distributions to Appellees were also un-disputably made "without receiving a reasonably equivalent value in exchange," and rendered the debtor insolvent. Appellant was therefore entitled to summary judgment on his § 44–1005 claim.

¶ 18 The judgment in favor of Appellees is reversed and the matter is remanded with directions to enter judgment for Appellant on his claim for relief pursuant to A.R.S. § 44–1005.

CONCURRING: JEFFERSON L. LANKFORD, Presiding Judge, and JAMES B. SULT, Judge.