SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| WAYNE HULLETT, individually and as TRUSTEE of WEH TRUST U/A 12/6/90, | ) ) ) ) | Arizona Supreme Court No. CV-01-0407-PR |
| Plaintiff-Appellant, | ) ) ) | Court of Appeals Division One No. 1 CA-CV 00-0550 |
| v. | ) ) ) | Maricopa County Superior Court No. CV 98-19294 |
| MR. and MRS. GEORGE COUSIN, as Trustees for Cousin Corporation Pension Plan and Trust, CPI OF FLORIDA PROFIT SHARING PLAN, NUMO INVESTMENT COMPANY, ROBERT W. FREMONT, DR. JEROME THEIS, as Trustee for Tri-County Clinic, Inc., Profit Sharing Plan, ANTHONY BARBERA, as Trustee for BC and L Pension Plan, RICHARD N. GOLD, as Trustee for R.N. Gold and Company, Inc., Pension, PROFESSIONAL FINANCIAL MANAGEMENT, COMMERCIAL BANK-TEXAS, as Custodian for Eloise Payne IRA Account, DR. LEO HERBER, RAYMOND JAMES AND ASSOCIATES, as Custodian for Robert L. Thompson IRA Account, ROBERT J. AND MARTINE M. GREGORY, as Trustees for the Gregory Family Trust, RESOURCES TRUST COMPANY, as Trustees of Robert W. Fremont IRA, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **O P I N I O N** |
| Defendants-Appellees. | ) ) | |

Appeal from the Superior Court in Maricopa County
The Honorable Jeffrey A. Hotham, Judge
**REMANDED**

Opinion of the Court of Appeals, Division One
*Hullett v. Cousin*, 201 Ariz. 119, 32 P.3d 44 (App. 2001)
**VACATED**

WARNICKE & LITTLER, P.L.C.                                    Phoenix
     By   Ronald E. Warnicke
          Robert C. Warnicke
          Blake D. Gunn
Attorneys for Plaintiff-Appellant

BROENING OBERG WOODS WILSON & CASS, P.C.                      Phoenix
     By   Lori B. Kirsch-Goodwin
          Donald Wilson, Jr.
          Cynthia Y. Kirkland
Attorneys for Defendants-Appellees Cousin Corporation Pension Plan
     & Trust, Resources Trust Company, as Trustees for Robert W.
     Fremont IRA, CPI of Florida Profit Sharing Plan, Estate of
     Eloise Payne and Dr. Leo Herber

**R Y A N**, Justice

¶1      Under Arizona's Uniform Fraudulent Transfer Act ("UFTA"), a transfer "is fraudulent as to a creditor whose claim arose before the transfer" if, as a result of the transfer, the debtor becomes insolvent and the transfer was not made in exchange for "reasonably equivalent value."  Ariz. Rev. Stat. ("A.R.S.") § 44-1005 (1994). The central issue in this case is whether an unknown, unasserted, and presumably time-barred claim rendered a partnership insolvent when the partnership transferred its assets.  We hold that such a claim must be disregarded if found to be time-barred at the time of the transfer.  Because the parties dispute whether the claim here was time-barred when the transfer occurred, we vacate the court of appeals' opinion and remand to the trial court for further proceedings.

## I.   BACKGROUND

¶2      Suncrest Villa Associates Limited Partnership was formed

2

in 1983, apparently for the purpose of investing in an apartment complex. Suncrest was funded with capital contributions from its general and limited partners. Clifton Investment Company and Rodger J. Clifton were Suncrest's general partners and Defendants-Appellees were Suncrest's limited partners.

¶3　　　In 1989, Plaintiff-Appellant Hullett purchased an apartment complex from Suncrest for $1.375 million, with a cash payment of $250,000 and a promissory note for $1.125 million, secured by a deed of trust. Hullett encountered financial difficulties and was unable to make payments on the apartment complex. In April 1994, Suncrest's trustee recorded a notice of trustee's sale of the complex. Hullett sold the complex in October 1994 to a "distress buyer" and Suncrest accepted a discounted payoff of Hullett's note.

¶4　　　Under the original limited partnership agreement, Suncrest was forced to dissolve upon accepting payoff of Hullett's note. The agreement stated that the partnership would end when "all of the loans funded by [Suncrest were] repaid or otherwise disposed of and all other assets converted to cash." Suncrest distributed its assets to the general and limited partners and was deemed dissolved as of October 25, 1994.

¶5　　　In December 1995, Hullett sued Suncrest and its general partner, Clifton, for negligent misrepresentation arising out of the 1989 sale of the apartment complex to Hullett. The alleged

misrepresentation concerned the apartment complex's operating expenses and income. Hullett did not name Suncrest's limited partners as defendants in the suit. Neither Suncrest nor Clifton filed an answer, and in November 1996 the trial court entered a $500,000 default judgment in favor of Hullett against Suncrest and Clifton, jointly and severally. Hullett was unable to collect the judgment because both Suncrest and Clifton were insolvent.

¶6 In October 1998, Hullett sued Suncrest's limited partners for fraudulent transfer. Hullett alleged that at the time of the distribution of assets, Suncrest knew of Hullett's claims against it. He also asserted that Suncrest was either insolvent at the time of the distribution or that the distribution rendered Suncrest insolvent. He therefore alleged that the transfer of Suncrest's assets was fraudulent. Hullett sought judgment against the limited partners in the amount each received in the distribution up to the default judgment amount.

¶7 The trial court granted summary judgment in favor of Suncrest, reasoning that "[t]he transferred distribution was in exchange for the partnership's legal obligation to return capital and profit." The court found no evidence that the limited partners "had any intent, actual or constructive, to defraud, hinder or delay any creditor," no evidence of bad faith, and no evidence that Suncrest was insolvent at the time of the distribution. The trial court also found that Suncrest "had no outstanding liabilities and

4

no notice of any claims or debts at the time of distribution," and that Hullett did not raise his claim until fourteen months after the dissolution.

¶8      The court of appeals reversed, finding that a claim does not have to be asserted before a limited partnership dissolves to render it insolvent at dissolution. *Hullett v. Cousin*, 201 Ariz. 119, 123, ¶ 11, 32 P.3d 44, 48 (App. 2001). The court also concluded that limited partnership capital contributions are assets, not debts, and that their distribution at Suncrest's dissolution was fraudulent because it caused the liabilities of the partnership to exceed the value of its assets. *Id*. at 123, ¶ 15, 32 P.3d at 48.  Additionally, the court reasoned that the distributions were undisputedly made without receiving a reasonably equivalent value in exchange, which rendered Suncrest insolvent. *Id*. at 124, ¶ 17, 32 P.3d at 49.  The court remanded with directions that the trial court enter summary judgment in favor of Hullett. *Id.* at 124, ¶¶ 17-18, 32 P.3d at 49.

¶9      We granted review to examine whether an unknown and presumably time-barred claim must be considered in determining if a partnership was insolvent when it transferred its assets to its limited partners.

## II.  DISCUSSION

¶10      The dispute here is essentially this.  The limited partners contend that an unknown and presumably time-barred claim

5

should not be considered in determining whether the partnership was insolvent on the date of its dissolution. In contrast, Hullett contends that even unasserted and wholly unknown claims are considered in determining whether a transfer rendered a partnership insolvent. Because this is largely an issue of statutory interpretation, our review is *de novo*. *See Cannon School Dist. No. 50 v. W.E.S. Const. Co.,* 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994).

## A.

¶11 Arizona enacted the Uniform Fraudulent Transfer Act in 1990. 1990 Ariz. Sess. Laws, ch. 17, §§ 1-2. Arizona's version of the UFTA was based upon the uniform act promulgated by the National Conference of Commissioners on Uniform State Laws in 1984. *See* Unif. Fraudulent Transfer Act, 7A U.L.A. 267 (1999). The UFTA replaced Arizona's Uniform Fraudulent Conveyance Act ("UFCA"), which had been on the books since 1919.[1] *See* 1919 Ariz. Sess.

---

[1] The UFCA, in turn, replaced earlier legislation pertaining to fraudulent conveyances. *See* Rev. Stat. Ariz. Civil Code §§ 3272-82 (1913); Rev. Stat. Ariz. §§ 2696-2708 (1901); Rev. Stat. Ariz. §§ 2030-38 (1887); Howell Code, ch. XXXVI, §§ 1-26 (1864). The origins of such legislation been traced as follows:

> [T]he Statute of 13 Elizabeth, . . . invalidated "covinous and fraudulent" transfers designed "to delay, hinder or defraud creditors and others." 13 Eliz., ch. 5 (1570). English courts soon developed the doctrine of "badges of fraud": proof by a creditor of certain objective facts (for example, a transfer to a close relative, a secret transfer, a transfer of title without transfer of possession, or grossly inadequate consideration) would raise a rebuttable presumption of

Laws, ch. 131, §§ 1-14.  Like the UFCA, the UFTA's purpose is to protect creditors.  *See* Prefatory Note to Unif. Fraudulent Conveyance Act, 7A U.L.A. 2 (1999).  The UFTA is set forth in A.R.S. sections 44-1001 to -1010.

¶12     Under the UFTA, fraudulent transfers are subdivided into two categories: actually fraudulent transfers, A.R.S. section 44-1004(A)(1), and constructively fraudulent transfers, A.R.S. sections 44-1004(A)(2) and 44-1005.  Only A.R.S. section 44-1005 is at issue here.[2]

¶13     Under A.R.S. section 44-1005, constructive fraud occurs when an exchange lacks reasonably equivalent value and "the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer."  No proof of intent is required to maintain a fraudulent transfer action under A.R.S. section 44-1005.  Nor is a good faith defense available to a debtor in a fraudulent transfer action brought under this section.  *See* A.R.S. § 44-

---

actual fraudulent intent. *See Twyne's Case,* 3 Coke Rep. 80b, 76 Eng.Rep. 809 (K.B. 1601); O. Bump, Fraudulent Conveyances: A Treatise upon Conveyances Made by Debtors to Defraud Creditors 31-60 (3d ed. 1882).
*BFP v. Resolution Trust Corp.*, 511 U.S. 531, 540-41 (1994).

[2] The limited partners argue that Hullett's fraudulent transfer action was brought only under A.R.S. section 44-1004(A)(1), which requires proof of an "actual intent to . . . defraud any creditor of the debtor."  And because there is no evidence of actual intent to defraud, the trial court's ruling must be affirmed.  However, we agree with the court of appeals' implied finding that Hullett's complaint adequately alleged a fraudulent transfer under A.R.S. section 44-1005.

7

1008(A); *In re Viscount Air Servs., Inc.,* 232 B.R. 416, 445 (Bankr. D. Ariz. 1998) (finding good faith defense inapplicable to A.R.S. section 44-1005).

¶14    A "transfer" is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset." A.R.S. § 44-1001(9).  The definition thus includes the distribution of assets at dissolution of a partnership.

¶15    "Insolvency" is defined at A.R.S. section 44-1002.  Under that section, a partnership is insolvent "if the sum of the partnership's debts is greater than the aggregate, at a fair valuation, of all of [its] assets and the sum of the excess of the value of each general partner's nonpartnership assets over the partner's nonpartnership debts."  A.R.S. § 44-1002(C).

¶16    The UFTA defines "debt" as "liability on a claim." A.R.S. § 44-1001(4).  A "claim" is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured."  A.R.S. § 44-1001(2).  By the plain language of its definition, a claim need not be reduced to a judgment, nor need it be asserted to qualify it as "right to payment."

¶17    The limited partners first argue that the rule established by the court of appeals--that a claim does not have to

8

be asserted to be considered in a solvency determination--would mean that "limited partners would find themselves indefinitely bound to an inactive entity, with no means to protect themselves from the possibility of future suit."  Thus they contend that a distribution of assets when there is no notice of a claim is proper under the UFTA.  Hullett, on the other hand, argues that "even contingent claims that are unasserted and even wholly unknown . . . are considered under the UFTA."[3]  If they were not, limited partnerships would become "preferred vehicles for defrauding creditors."

¶18     Both sides overstate the issue.  The limited partners would not be indefinitely bound to an inactive entity.  An action under A.R.S. section 44-1005 is barred if not brought within "four years after the transfer was made."  A.R.S. § 44-1009(2).  Also, a claim that forms the basis of the fraudulent transfer allegation brought under A.R.S. section 44-1005 need not necessarily be known.  Otherwise, there would be no need for that section, because transfers made when a claim is known or asserted would potentially

---

[3]  The parties assert at various points that the negligent misrepresentation claim here was contingent.  Contingent claims are considered in a solvency analysis only if there is a likelihood, as of the date solvency is being measured, that the contingency will occur.  *See, e.g., In re Martin*, 145 B.R. 933, 949 (Bankr. N.D. Ill. 1992).  However, the underlying negligent misrepresentation claim is not a contingent claim.  A contingent claim is one "that has not yet accrued and is dependent on some future event that may never happen."  Black's Law Dictionary 241 (7th ed. 1999).  Hullett's claim undisputedly had accrued.  The parties dispute, however, when that claim accrued.

be actual fraudulent transfers under A.R.S. section 44-1004(A)(1).

¶19       Nevertheless, under the UFTA, the claim upon which the fraudulent transfer action is based must be a valid claim.  Thus, the core question here is whether Hullett's misrepresentation claim constituted a "right to payment" or a "claim" for UFTA solvency purposes although the claim was unknown and presumably time-barred when the partnership dissolved.

¶20       Because this is a matter of first impression for Arizona, we look to cases from other jurisdictions having similar statutes. For example, the Bankruptcy Code uses the same constructive fraud language as that found in Arizona's version of the UFTA.  *Compare* 11 U.S.C. § 548(a)(1)(B)(ii)(I) (Supp. 2002) *with* A.R.S. § 44-1005. The Bankruptcy Code and the Uniform Laws Annotated's version of the Uniform Fraudulent Conveyance Act also define the key terms "insolvent," "debt," and "claim" similarly.  *Compare* 11 U.S.C. § 101(32)(B) (1997) (defining insolvent), § 101(12) (defining debt), § 101(5)(A) (defining claim) *and* Unif. Fraudulent Conveyance Act §§ 1-2, 7A U.L.A. 6, 22-23 (1999) *with* A.R.S. §§ 44-1002(C), -1001(4), - 1001(2).  Thus, we consider relevant bankruptcy and UFCA cases that address the definitions relevant to this case.

¶21       Two principles inform our answer to the core question. First, to set aside a transfer as fraudulent, there must have been a valid claim at the time of the transfer, meaning a right to payment.  A.R.S. § 44-1001(2); *see Cohen v. De la Cruz,* 523 U.S.

10

213, 218 (1998) (defining "right to payment" as "nothing more nor less than an enforceable obligation") (citation omitted). Second, whether a claim rendered the partnership insolvent is determined as of the date of the transfer, or in this case, the date the partnership dissolved. A.R.S. § 44-1005; *see also First Nat. Bank v. Frescoln Farms, Ltd.,* 430 N.W.2d 432, 437 (Iowa 1988) ("Solvency must be determined as of the time the alleged fraudulent transfer took place.") (citation omitted).

¶22     The UFTA's definition of claim is unquestionably broadly worded. *See* A.R.S. § 44-1001(2). As such, it includes unknown and unasserted claims. *In re W.R. Grace & Co.*, 281 B.R. 852, 862 (Bankr. D. Del. 2002) ("This expansive language [defining a claim] must negate any residual inference that a right to payment must be known and asserted to be a claim."). But while the UFTA defines a claim broadly, such a claim must be an enforceable obligation. *See, e.g., Jahner v. Jacob*, 515 N.W.2d 183, 185 (N.D. 1994). As noted by the court in *Jahner*, this requirement "has a long history." *Id.* The rationale is that the UFTA is remedial; it does not create new claims. *Clark v. Rossow,* 134 Ariz. 490, 491, 657 P.2d 903, 904 (App. 1982) ("The fraudulent conveyance act, A.R.S. § 44-1001, et seq., does not create a new claim. If a claim does not exist there is no remedy.") (citations omitted). Accordingly, a claim that is time-barred is not a "right to payment." *Jahner*, 515 N.W.2d at 185; *see also State of Rio De Janeiro v. E.H. Rollins*

11

*& Sons, Inc.*, 87 N.E.2d 299, 300 (N.Y. 1949); *Remington-Rand, Inc. v. Emory University*, 196 S.E. 58, 59 (Ga. 1938).

¶23    The limited partners contend that because Hullett's negligent misrepresentation claim was based upon actions that occurred in 1989, it was time-barred when the partnership dissolved in 1994.    The statute of limitations for a negligent misrepresentation claim is two years.    A.R.S. § 12-542 (1992). Consequently, on its face, Hullett's fraudulent transfer action is based on a time-barred claim, and thus Hullett did not have a valid right to payment when the partnership dissolved.

¶24    Hullett makes two arguments against the limited partners' contention that his misrepresentation action was barred by the statute of limitations.  First, he argues that the limited partners raised the issue for the first time in their petition for review. Second, he argues that the limited partners are attempting to collaterally attack his original default judgment.  We reject both arguments.  We reject the first argument because in the court of appeals the limited partners argued that Hullett had no right to payment because he did not have a valid claim.  They argued in their answering brief that "a right to payment under a claim may be lost if not timely asserted," and that "had the [misrepresentation] claim been brought against them originally," they would have been entitled to raise defenses such as the statute of limitations. Therefore, the record reflects that the limited partners are not

12

raising a new issue in this court.

¶25     We reject the second argument because solvency is determined at the time of the transfer, not at some later time. A.R.S. § 44-1005; *In re Martin*, 145 B.R. 933, 949 (Bankr. N.D. Ill. 1992) (holding that in determining whether a debtor was insolvent at time of the conveyances, liability for compensatory damages arose when debtor committed torts of fraud and conversion, so such liabilities would be considered, even though damages had not been awarded).

¶26     Nonetheless, Hullett contends that the default judgment "operates as an adjudication upon the merits of all well-pleaded facts." And because his original complaint against the partnership alleged that he did not "discover" the negligent misrepresentation until January 1994, the limited partners "are attempting an impermissible collateral attack on [his] original judgment."

¶27     Although couched by Hullett as a collateral attack on the judgment, we view Hullett's argument as the offensive use of collateral estoppel. *Garcia v. General Motors Corp.*, 195 Ariz. 510, 514 n.2, ¶ 8, 990 P.2d 1069, 1073 n.2 (App. 1999). Collateral estoppel, or issue preclusion, applies when an issue was actually litigated in a previous proceeding, there was a full and fair opportunity to litigate the issue, resolution of the issue was essential to the decision, a valid and final decision on the merits was entered, and there is common identity of parties. *See Collins*

13

*v. Miller & Miller, Ltd.*, 189 Ariz. 387, 397, 943 P.2d 747, 757 (App. 1996).

¶28     We find it unnecessary to decide whether collateral estoppel applies here.  For even in cases in which the technical requirements for the application of collateral estoppel are met, courts do not preclude issues when special circumstances exist. *See Ferris v. Hawkins*, 135 Ariz. 329, 331, 660 P.2d 1256, 1258 (App. 1983) ("Principles of issue preclusion should not be applied, however, where 'there is some overriding consideration of fairness to a litigant, which the circumstances of the particular case would dictate.'") (quoting *Di Orio v. City of Scottsdale*, 2 Ariz. App. 329, 332, 408 P.2d 849, 852 (1965)).  The Restatement of the Law of Judgments lists exceptions to the general rule of issue preclusion even though an issue may have been "actually litigated and determined by a valid and final judgment":

> There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

Restatement (Second) Judgments § 28(5) (1982).

¶29     We conclude that the special circumstances of this case did not provide the limited partners "an adequate opportunity . . .

14

to obtain a full and fair adjudication in the initial action."
*Id.* The limited partners never had an opportunity to raise a statute of limitations defense against the negligent misrepresentation claim. And because the general partner and the partnership defaulted, it would be inequitable to bind the limited partners to the default judgment, at least with respect to the statute of limitations issue.[4] Therefore, we hold the limited partners are not estopped from challenging the validity of the initial claim on the basis that it was time-barred at the time of the transfer.

¶30 Because of the procedural posture of this case, there has been no discovery on the issue of when Hullett's negligent misrepresentation claim accrued. Accordingly, we remand to the trial court for further proceedings on this issue. *See Walk v. Ring,* 202 Ariz. 310, 318, ¶ 30, 44 P.3d 990, 998 (2002) (finding that determination of when cause of action accrues is ordinarily a question of fact).

**B.**

¶31 The limited partners also argue that even if Hullett's claim was valid, the transfer at dissolution was for value, and thus it was not fraudulent under A.R.S. section 44-1005. Constructive fraud under A.R.S. section 44-1005 requires both

---

[4] The limited partners do not otherwise challenge the default judgment's finding of liability or damages.

15

insolvency and a transfer not for value. The court of appeals concluded that Suncrest's distribution to the limited partners was not a "transfer for value" under A.R.S. section 44-1003(A).[5] *Hullett*, 201 Ariz. at 123, ¶ 14, 32 P.3d at 48. As pointed out by the court of appeals, distribution of a limited partner's capital contribution is the return of an asset, not satisfaction of an antecedent debt. *Id.* at 123, ¶ 15, 32 P.3d at 48; *see also In re Riverside-Linden Investment Co.,* 925 F.2d 320, 323 & n.1 (9th Cir. 1991) (finding interest in a partnership is not a debt of the partnership). We agree with this reasoning. Under A.R.S. section 44-1003(A), a distribution of assets previously advanced by the limited partners, for example capital contributions, may be a return of value previously advanced to the partnership, but it is not a transfer for value.

¶32 Accordingly, if Hullett is able to establish that his misrepresentation claim was not time-barred at the time Suncrest transferred its assets to the limited partners, he would be a creditor of Suncrest for purposes of A.R.S. section 44-1005.

---

[5] Section 44-1003(A), A.R.S., defines value as follows:

> Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise to furnish support to the debtor or another person unless the promise is made in the ordinary course of the promisor's business.

### III. CONCLUSION

¶33     For the above reasons, we vacate the court of appeals'
opinion, and remand this matter to the trial court for further
proceedings consistent with this opinion.

_____
Michael D. Ryan, Justice

CONCURRING:

_____
Charles E. Jones, Chief Justice

_____
Ruth V. McGregor, Vice Chief Justice

_____
Stanley G. Feldman, Justice (Retired)

_____
Rebecca White Berch, Justice