19CA1227 Peo v Johnson 11-24-2021 COLORADO COURT OF APPEALS Court of Appeals No. 19CA1227 Mesa County District Court No. 18CR512 Honorable Gretchen B. Larson, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Sedona Paige Johnson, Defendant-Appellant. JUDGMENT AND ORDER AFFIRMED Division II Opinion by JUDGE BERGER Román and Yun, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced November 24, 2021 Philip J. Weiser, Attorney General, Wendy J. Ritz, First Assistant Attorney General, Daniel J. De Cecco, Assistant Attorney General Fellow, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Jeffrey A. Wermer, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant 
1 ¶ 1 A jury convicted defendant, Sedona Paige Johnson, of criminal mischief. As part of her sentence, the court ordered her to pay restitution for property damage. Johnson appeals the conviction and the restitution order, making five arguments:  the district court erred in excluding two lines of testimony, which deprived Johnson of her constitutional right to present a meaningful defense;  the district court erred in allowing a police service technician to testify regarding “signs of deception” displayed by a witness in the investigation without qualifying the technician as an expert;  the prosecutor engaged in prosecutorial misconduct during closing argument and rebuttal closing argument;  the above alleged errors constituted cumulative error; and  the district court erred in calculating the restitution amount, contrary to the relevant statute. We address and reject each argument and affirm the conviction and the restitution order. 
2 I. Relevant Facts and Procedural History ¶ 2 While at a bar with a group of people, Johnson had a verbal altercation with the alleged victim. Johnson later left with the group. What happened next, during the drive home from the bar, was disputed at trial. ¶ 3 The group’s designated driver testified that while driving home from the bar, Johnson gave him directions to a party. But according to the driver, instead of going to the party, Johnson “jumped out” and “started beating” on a parked car door. He tried “yanking her off” but Johnson continued to kick the car until “she finally gave up and went into the car.” The group then drove away from the car, which turned out to be the victim’s. Another passenger in the car similarly testified that he saw Johnson get out and attack the victim’s car before the driver tried to stop her. ¶ 4 The victim was not home when the car was damaged, but she discovered the damage the next day and eventually reported the damage to the police. ¶ 5 Johnson denied that she damaged the victim’s car and testified, contrary to other witnesses, that she was driven home. 
3 The designated driver initially supported Johnson’s account in an interview with Police Officer Donnie Smith.1 But when Officer Smith (believing the driver was being untruthful) told him that it was a crime to lie to the police, he changed his story. ¶ 6 A jury convicted Johnson of felony criminal mischief, and as part of her sentence, the district court ordered her to pay restitution for the damage. II. Analysis A. Excluded Testimony ¶ 7 Johnson first contends that the district court reversibly erred by excluding two lines of her testimony regarding her relationship with the victim. 1. Additional Facts ¶ 8 Before trial, the district court had made a preliminary ruling that testimony regarding Johnson’s prior history with the victim was not “relevant or admissible.” 1 While Officer Smith’s official title was “Police Service Technician,” he testified that was another name for a “desk officer.” For the sake of clarity, we refer to him as “Officer Smith.” 
4 ¶ 9 On direct examination, the victim testified that the “main reason” she knew Johnson was because Johnson kicked her car, though she acknowledged she had known Johnson since seventh grade. The victim said she saw Johnson at the bar and asked Johnson “why are you pregnant at the bar” before the two “kind of swapped words” and were separated. ¶ 10 The jury then asked a question, which the court posed to the victim: “Did you say anything else to Ms. Johnson other than why are you pregnant at the bar? And did she say anything to you?” Defense counsel twice objected to the victim’s answers, and the court sustained the objections. Then, the victim said, “Well, honestly, that was a year ago, so I don’t remember exactly word for word what was said.” ¶ 11 When Johnson testified, she sought to introduce evidence of two interactions with the victim: the victim threatened to fight her at the bar, and the victim had hit Johnson’s car while Johnson was with the victim’s ex-boyfriend at a mall.2 2 In the opening brief, Johnson asserts both that she “sought to testify that, a month before trial,” the victim had seen her at the 
5 ¶ 12 Defense counsel argued that the victim’s testimony opened the door to this evidence. Counsel argued: (1) the alleged threats were admissible to explain Johnson’s state of mind when she sent a tweet3 after leaving the bar that disparaged the victim; and (2) the mall incident was admissible to show the context of their relationship and the victim’s motive to falsely accuse Johnson. The prosecution objected under Colorado Rules of Evidence 403, 404, and 608. ¶ 13 Ultimately, the district court ruled as follows: With respect to the incident alleged where Ms. Johnson and [the boyfriend] were at the mall and saw [the victim] approximately a month before. And [the victim] followed them to Ms. Johnson’s vehicle and allegedly hit Ms. Johnson’s vehicle, although no charges were filed. The Court is not going to permit that evidence to come in. That is evidence that is the proper subject of a 404(b) motion. The Court finds that the probative value of the evidence is substantially outweighed by the mall and that the mall incident “occurred only one month before the alleged offense.” (Emphasis added.) The record supports that the mall incident allegedly occurred one month before the alleged offense, not one month before trial. 3 The tweet read, “Ayyyyyy [victim’s name] YOU RATCHET B**** LETS THROW HANDS YOU MANNNNNNN A** B**** F*** YOU. Pull up. [Victim’s name] N**** A** COME GRT IF,” and was followed with a spelling correction: “Get it.” 
6 danger of unfair prejudice and confusion of the issues before the jury. Whether or not that incident did or did not happen is not what is before the Court at this time. With respect to the information that [the victim] threatened to fight Ms. Johnson on February 22nd, as a preliminary matter, the Court does not find that [the victim’s] statement, the main reason I know her, in any way, opened the door to prior misconduct to other acts, evidence, whatsoever. There could be a variety of reasons [by] which [the victim] know[s] Ms. Johnson, or for a variety of reasons [sic]. And just saying that the main reason is because of this doesn’t open up the door to other acts evidence coming in. Furthermore, [the victim] started to talk about whatever interaction that occurred between her and Ms. Johnson at the [bar], and Defense objected, and the Court sustained the objection. So the Court is not going to now permit, once [the victim] has not been permitted to testify to her version of whatever happened at the [bar] which sent this series of events, whatever events they were, into effect, to now permit Ms. Johnson to testify about those things. And so the request to introduce that evidence is, likewise, denied. 2. Preservation and Standard of Review ¶ 14 The parties agree that this issue was preserved. We review evidentiary rulings for abuse of discretion. People v. Osorio-Bahena, 2013 COA 55, ¶ 21. A court abuses its discretion if the ruling is 
7 “manifestly arbitrary, unreasonable, or unfair,” or if it is based on an “erroneous view of the law.” Id. 3. Analysis ¶ 15 Johnson argues on appeal that both lines of testimony were admissible for three reasons: they were relevant and not inadmissible under CRE 403; they were admissible as res gestae; and they were admissible because the victim’s testimony opened the door. ¶ 16 Evidence is relevant if it has “any tendency to make the existence of any fact that is of consequence . . . more probable or less probable” than without it. CRE 401. Relevant evidence is generally admissible. CRE 402. Even relevant evidence may be excluded, though, if its “probative value is substantially outweighed by the danger of . . . confusion of the issues, or misleading the jury, or by considerations of . . . needless presentation of cumulative evidence.” CRE 403. ¶ 17 Courts should “exclude evidence that has little bearing on credibility, places undue emphasis on collateral matters, or has the potential to confuse the jury.” People v. Wilson, 2014 COA 114, 
8 ¶ 36 (quoting People v. Knight, 167 P.3d 147, 153 (Colo. App. 2006)) (discussing CRE 403 in the CRE 608 context). ¶ 18 Moreover, “[a] trial court retains the discretion to assess the incremental probative value of evidence offered by a criminal defendant and to exclude even logically relevant evidence that would be more wasteful of time, confusing, or misleading than helpful to the jury.” People v. Brown, 2014 COA 155M-2, ¶ 15 (quoting People v. Saiz, 32 P.3d 441, 449 (Colo. 2001)). a. Relevance ¶ 19 We seriously doubt the relevance of the alleged threats and the mall incident. The probative connection to any facts of consequence in this case is tenuous at best. But even accepting Johnson’s contentions that the threats demonstrated her state of mind when she sent the tweet and that the mall incident demonstrated the victim’s motive to make a false report, we conclude that the district court did not abuse its discretion in excluding this testimony. b. Alleged Threats and CRE 403 ¶ 20 The district court did not cite CRE 403 in its pretrial ruling or the ruling at trial excluding testimony regarding the victim’s alleged 
9 threats. On appeal, however, the Attorney General argues the threats added little to the evidence of Johnson’s state of mind after leaving the bar, presumably relying on the principle that “a party may defend a trial court’s judgment on any ground supported by the record, regardless of whether that ground was relied on by the trial court.” People v. Garcia, 179 P.3d 250, 257 (Colo. App. 2007), as modified on denial of reh’g (Nov. 21, 2007). ¶ 21 We agree that the incremental probative value of the alleged threats was minimal. The jury heard other testimony regarding the altercation between Johnson and the victim, including that the victim had accused her of being at a bar while pregnant. Although the threats may have provided additional context for Johnson’s tweet, the jury already heard that the two had “swapped words.” ¶ 22 To the extent, therefore, that the district court concluded the alleged threats had minimal probative value that was substantially outweighed by the cumulative nature of the threats, we perceive no abuse of discretion. ¶ 23 If the district court did not consider CRE 403 in excluding the alleged threats, we affirm because the record supports the 
10 conclusion that the probative value of the threats was substantially outweighed by their cumulative nature. See Garcia, 179 P.3d at 257-58 (engaging in CRE 403 balancing on appeal where the district court did not). “We can affirm the trial court’s evidentiary ruling on any ground supported by the record, even if that ground was not articulated or considered by the trial court.” Brown, ¶ 15. c. Mall Incident and CRE 403 ¶ 24 Similarly, while the district court did not expressly cite CRE 403 in its ruling that the mall incident was inadmissible, it did conclude that under CRE 404(b) that incident’s probative value was substantially outweighed by the risk of unfair prejudice and confusion of the issues. ¶ 25 Johnson argues that the “jury could easily understand the difference between the mall incident and the conduct underlying Ms. Johnson’s charge.” But “[i]f reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.’” Wilson, ¶ 35 (quoting People v. Hoover, 165 P.3d 784, 802 (Colo. App. 2006)). Because reasonable persons could differ on whether the mall 
11 incident would have confused the jury, we conclude the district court did not abuse its discretion in excluding that evidence on that basis. d. Other Bases for Admission ¶ 26 Johnson separately argues that the alleged threats and the mall incident were admissible as res gestae evidence and because the victim’s testimony opened the door. But our CRE 403 analysis applies to each of those arguments such that even if they did provide an independent basis for admission, we conclude it was not an abuse of discretion to exclude the evidence under CRE 403. ¶ 27 Ultimately, because the district court did not abuse its discretion in excluding the alleged threats or the mall incident, reversal is not warranted. e. Constitutional Error ¶ 28 We have concluded that the district court did not abuse its discretion and that reversal is not warranted. Even if we assume that the district court abused its discretion by excluding the evidence, however, it was not constitutional error because Johnson was not “denied virtually [her] only means of effectively testing 
12 significant prosecution evidence.” Krutsinger v. People, 219 P.3d 1054, 1062 (Colo. 2009). ¶ 29 “An erroneous evidentiary ruling may rise to the level of constitutional error if it ‘deprived the defendant of any meaningful opportunity to present a complete defense.’” Osorio-Bahena, ¶ 17 (quoting Krutsinger, 219 P.3d at 1061-62). ¶ 30 An evidentiary error that is constitutional requires reversal “unless we are ‘confident beyond a reasonable doubt that the error did not contribute to the guilty verdict.’” Id. (quoting Bernal v. People, 44 P.3d 184, 200 (Colo. 2002)). However, a preserved, non-
constitutional evidentiary error will be reversed only if the error “substantially influence[d] the verdict or affect[ed] the fairness of the trial proceedings.” Krutsinger, 219 P.3d at 1063. ¶ 31 Even without the alleged threats, there was substantial evidence of an altercation between the victim and Johnson at the bar, which was similarly probative of Johnson’s state of mind when she sent the disparaging tweet. And although the mall incident was not admitted, defense counsel was able to cross-examine the victim 
13 about her ex-boyfriend dating Johnson to establish the context of their relationship and a possible motive to make a false accusation. ¶ 32 Indeed, the court made clear that it was not limiting defendant’s theory of the case, it was only excluding evidence that had a tenuous connection to the case: I’m not, in any way, suggesting, [defense counsel], that you cannot argue to the jury that [the victim] made this up or did these other things because of this animosity about the statement that was testified to. I’m not saying that you can’t make those arguments, whatsoever. The Court’s just not going to permit testimony about these other acts evidence -- other acts to come into evidence. ¶ 33 For the same reasons, we also conclude that any assumed abuse of discretion was harmless because it did not “substantially influence the verdict or affect the fairness of the trial proceedings.” Id. B. Police Service Technician Testimony ¶ 34 Johnson next argues that the district court erred when it allowed Officer Smith to testify that the designated driver was showing “signs of deception” during an interview without first qualifying him as an expert. 
14 1. Additional Facts ¶ 35 During trial, the prosecution called Officer Smith, who had investigated the car damage. Officer Smith testified that the designated driver had given him two different stories during their interview — the first did not accuse Johnson of the damage and the second did. ¶ 36 In explaining the differing accounts, Officer Smith testified that “[b]ased on my experience and my training, I was detecting deception,” to which defense counsel objected. The court overruled the objection. Officer Smith continued: Based on my training, [the designated driver] was giving signs of deception, so I decided to let him know that it is a crime to lie to the police department. And lying by omission is still lying. And I asked him if he wanted to add anything to his statement. And at that point, he said let’s start over. And then he started from the very beginning at [the bar]. And that’s when he told the story that was in my report. 2. Preservation and Standard of Review ¶ 37 Again, we review evidentiary rulings for abuse of discretion, which occurs when a “ruling is manifestly arbitrary, unreasonable, 
15 or unfair,” People v. Murphy, 2021 CO 22, ¶ 16, or if it is based on an erroneous view of the law. Osorio-Bahena, ¶ 21. ¶ 38 The parties dispute whether Johnson preserved this issue and whether we should apply the harmless error or plain error standard of reversal. Because we conclude there was no error, we need not decide this question. 3. Analysis ¶ 39 Johnson argues that Officer Smith’s testimony constituted “expert opinion in the guise of lay witness opinion” because Officer Smith was not familiar with the designated driver personally and because he invoked his training and experience. According to Johnson, this alleged error deprived her of her constitutional right to present a defense and meaningfully cross-examine Officer Smith. We reject these arguments because Officer Smith’s testimony was properly admitted. ¶ 40 The Colorado Rules of Evidence authorize expert and lay opinions under the appropriate circumstances. See CRE 701, 702. “[T]he critical factor in distinguishing between lay and expert 
16 testimony is the basis for the witness’s opinion.” Venalonzo v. People, 2017 CO 9, ¶ 22. ¶ 41 Johnson relies on this court’s decision in People v. Murphy, 2019 COA 39, ¶ 21, but the Colorado Supreme Court reversed Murphy and it forecloses Johnson’s arguments. See Murphy, 2021 CO 22, ¶ 42. ¶ 42 First, like the officer’s interpretation of body language in Murphy, we conclude that ordinary people “could rationally infer, based on their own experiences,” that they think someone is deceiving them. Id. at ¶ 25. Here, Officer Smith merely explained to the jury why he did not believe the driver’s first account of what happened. If Officer Smith had not done so, “the jury would not understand why” he continued to question the driver after the first account. Id. at ¶ 28. ¶ 43 Second, although Officer Smith testified that he thought the driver was showing signs of deception “based on [his] experience and [his] training,” that does not necessarily mean he was testifying as an expert. “[S]imply referencing one’s ‘training and experience’ does not transform an officer’s lay opinion testimony into expert 
17 testimony.” Id. at ¶ 31. Rather, the basis of the witness’s opinion is determinative. Id. at ¶ 32. Here, the basis of Officer Smith’s opinion was his everyday experiences, not his police training. ¶ 44 True, the supreme court recognized that it was “significant [in Murphy] that the prosecution did not elicit any testimony regarding [the officer’s] training and experience in conducting witness interviews.” Id. at ¶ 33. Here, Officer Smith did briefly testify about training he had received in interrogation. But that testimony was not sufficiently extensive to make his opinion one based on training, rather than the experiences of an ordinary person. ¶ 45 Finally, to the extent that Johnson separately argues that Officer Smith’s testimony improperly bolstered the designated driver’s testimony, we also reject that argument under Murphy. While asking a witness to comment on the credibility of another is generally prohibited, it is proper to elicit testimony “for the narrow purpose of explaining an officer’s interviewing tactics.” Id. at ¶¶ 36-
37. Officer Smith’s testimony was for the narrow purpose of explaining why he continued questioning the driver, not to bolster the driver’s second version of the story. 
18 ¶ 46 “Mindful of the trial court’s broad discretion regarding evidentiary questions,” we conclude that the district court did not abuse its discretion in allowing Officer Smith’s testimony without first qualifying him as an expert. Id. at ¶ 23. Because we conclude there was no abuse of discretion, reversal is not required under any standard of reversal. C. Prosecutorial Misconduct ¶ 47 Next, Johnson argues that the district court plainly erred by allowing the prosecutor to make certain statements during closing argument and rebuttal closing argument. 1. Additional Facts ¶ 48 During closing argument and rebuttal closing argument, the prosecutor made comments about several of the witnesses and their testimony. Concerning the designated driver, the prosecutor stated the following:  “Starting with [the driver], who I would submit is probably the most important witness in this case.”  “I would submit that [the driver] is the true, independent, objective witness with no reason to be untruthful.” 
19  “I would submit that his evidence is consistent, largely,” with other evidence.  “And [the driver] realized that he should just come clean and be honest about what happened. I submit to you that that’s what he did when he fully disclosed to [Officer] Smith.”  “I would submit that any evidence that [the driver] made up [the second account] is vague, speculative and imaginary.” ¶ 49 Similarly, regarding one of the eyewitness passengers who was in the car, the prosecutor stated, “I think he’s also somewhat independent and objective. He testified that he’s friends with both [Johnson] and [the victim].” He also recounted that witness’s testimony: He said I told [the victim] because if something like that happened to me, I would want to find out. I would want someone to tell me. And doesn’t that make perfect sense? That he did what anyone else -- what he would want anyone else in his position to do? I would submit that that’s what he did when he testified, as well. He told the truth because that’s what anyone else in his position, he 
20 would want them to do. ¶ 50 The prosecutor stated of a second eyewitness passenger, “Why would [she] say that she saw [the designated driver] restrain [Johnson] and get her back into the car if that didn’t happen? Why would [she] say that?” ¶ 51 Concerning evidence that the victim had offered to “pay” a witness for “proof” that Johnson did the damage, the prosecutor said, “I would submit that [the victim] was asking for evidence. The same thing that you all want in this case. You all want to see and hear all of the best evidence that you can. And I would submit that that’s all she wanted, as well.” ¶ 52 Finally, the prosecutor made the following statements about Johnson:  “Was she aware that she was damaging [the victim’s] property. And I would respectfully submit that she was. That she knew what she was doing, she intended to do that. She intended to damage [the victim’s] car, specifically.” 
21  “I would submit that an angry, upset, drunk girl, wearing high heels absolutely could do that kind of damage.”  “I submit the evidence here is very strong that Ms. Johnson caused this damage. It’s consistent with your reason and common sense. Any doubts in this case are vague, speculative, and imaginary. Ms. Johnson is guilty.” 2. Preservation and Standard of Review ¶ 53 We review claims of prosecutorial misconduct under a two-
step framework. First, we “determine whether the prosecutor’s questionable conduct was improper based on the totality of the circumstances,” then we determine “whether such actions warrant reversal according to the proper standard of review.” Wend v. People, 235 P.3d 1089, 1096 (Colo. 2010). ¶ 54 The parties agree that all the claims of prosecutorial misconduct are unpreserved and that we therefore review only for plain error. “Plain error occurs only when an error so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the jury’s verdict.” Domingo-Gomez v. People, 
22 125 P.3d 1043, 1053 (Colo. 2005). In the context of prosecutorial misconduct, reversal is required only when the misconduct was “flagrantly, glaringly, or tremendously improper.” Id. (quoting People v. Avila, 944 P.2d 673, 676 (Colo. App. 1997)). 3. Analysis ¶ 55 Prosecutors may not make “expressions of personal belief as to the guilt of the defendant” or “communicate [their] opinion on the truth or falsity of witness testimony.” Id. at 1049. However, prosecutors may “argue from reasonable inferences anchored in the facts in evidence.” Id. at 1051. Whether a statement is one of improper personal opinion “requires a reviewing court to consider the language used, the context in which the statement was made, and any other relevant factors.” Id. ¶ 56 Johnson contends that the prosecutor made eleven statements during closing argument and rebuttal closing argument that constituted improper statements of personal opinion on witness credibility and Johnson’s guilt. ¶ 57 Johnson emphasizes the prosecutor’s use of the phrase “I submit” and argues that it constituted an expression of personal 
23 opinion. See People v. Clark, 214 P.3d 531, 542 (Colo. App. 2009), aff’d on other grounds, 232 P.3d 1287 (Colo. 2010); People v. Washington, 179 P.3d 153, 169 (Colo. App. 2007), aff’d on other grounds, 186 P.3d 594 (Colo. 2008). While we assume without deciding that there may be a case in which the use of that phrase constitutes improper opinion, this is not it. Rather, viewed in context, each statement constituted permissible comment that was based on reasonable inferences drawn from the evidence. ¶ 58 The statement that is the closest call is “I think [an eyewitness passenger was] also somewhat independent and objective.” But the prosecutor immediately followed up by noting the witness was friends with the victim and Johnson. In context, that later statement made clear that the prosecutor was only drawing the jury’s attention to the evidence of the witness’s credibility as a friend of both Johnson and the victim. ¶ 59 Johnson also argues that the prosecutor misstated the evidence when he said, “Why would [the second eyewitness passenger] say that she saw [the designated driver] restrain [Johnson] and get her back in the car if that didn’t happen? Why 
24 would [the second eyewitness passenger] say that?” According to Johnson, she did not. ¶ 60 But the prosecutor impeached that witness by asking, “[Y]ou [said] you remember [the designated driver] having to get out and get [Johnson] back in the car,” to which the witness answered, “Yes.” Recognizing that “arguments delivered in the heat of trial are not always perfectly scripted,” we conclude the word “restrain” was a reasonable characterization that was based on the evidence. People v. McBride, 228 P.3d 216, 221 (Colo. App. 2009). ¶ 61 Ultimately, “based on the totality of the circumstances,” none of the prosecutor’s statements were improper, and reversal is therefore not required. Wend, 235 P.3d at 1096. D. Cumulative Error ¶ 62 Next, Johnson contends that reversal is required because the above alleged errors constituted cumulative error under Howard-
Walker v. People, 2019 CO 69. Because we conclude there were no errors, this claim fails. E. Restitution Order ¶ 63 Finally, Johnson argues that the district court erred when it imposed restitution equal to the estimated cost of repairing the 
25 victim’s car even though the victim traded in the car without making the repairs. 1. Additional Facts ¶ 64 At the sentencing and restitution hearing, the victim testified that she had received an estimate for the damage to her car before selling it without having the damage repaired. The court admitted the written estimate into evidence. The victim also testified that the dealer who later bought the car “took almost three thousand dollars off for all the damage.” ¶ 65 After defense counsel and the prosecutor disputed whether the cost of repair established the restitution award even though the victim had never had the car repaired, the court ordered restitution based on the estimate. 2. Preservation and Standard of Review ¶ 66 The parties agree this issue was preserved. The appropriate standard of review of a restitution order depends on the particular issue we are asked to review. People v. Barbre, 2018 COA 123, ¶ 24. Johnson’s claim raises a question of statutory interpretation, which we review de novo. People in Interest of A.N., 2019 COA 67, ¶ 5. 
26 3. Analysis ¶ 67 Under Colorado law, “restitution” is defined as “any pecuniary loss suffered by a victim and includes but is not limited to all out-
of-pocket expenses, . . . anticipated future expenses, . . . and other losses or injuries proximately caused by an offender’s conduct and that can be reasonably calculated and recompensed in money.” § 18-1.3-602(3)(a), C.R.S. 2021. ¶ 68 “The value of property for purposes of restitution is determined by the victim’s actual, pecuniary loss, or the amount of money that will fulfill the statutory purpose of making the victim whole to the extent practicable.” People v. Henson, 2013 COA 36, ¶ 23. ¶ 69 Johnson argues that the estimate amount would have been appropriate had the victim testified that she intended to fix the car before selling it. But because she did not do that, according to Johnson, “the cost of repair was not [the victim’s] actual, pecuniary loss” under the statute and the court’s order based on the cost of repair estimate was therefore contrary to the statute. ¶ 70 We reject this argument. When Johnson damaged the victim’s car, the value of the car declined by the cost to repair it. That lost 
27 value was a “pecuniary loss” for the victim and the estimate represented the amount that could be “reasonably calculated and recompensed in money” to the victim. § 18-1.3-602(3)(a). The court’s order was therefore consistent with the statute. ¶ 71 In any event, the district court also heard testimony from the victim that the dealer reduced the trade-in value by nearly $3,000 because of the damage. Although the district court based the order amount on the written estimate instead of this testimony, this statement provided independent evidence for the court to conclude that the victim suffered a pecuniary loss that was proximately caused by Johnson’s conduct. III. Disposition ¶ 72 The judgment of conviction and the restitution order are affirmed. JUDGE ROMÁN and JUDGE YUN concur.