**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Nikolay SENCHENKO, Defendant–**
**Appellant.**

**No. 96–30241.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 8, 1997.

Decided Jan. 8, 1998.

Leslie R. Weatherhead, Spokane, Washington, for defendant-appellant.

Timothy J. Ohms, Spokane, Washington, for plaintiff-appellee.

Before: WRIGHT and SCHROEDER, Circuit Judges, and SCHWARZER,* Senior District Judge

SCHWARZER, Senior District Judge:

Senchenko was charged in a one-count indictment with violation of 16 U.S.C. §§ 3372(a)(1) and 3373(d)(1)(B) for having "knowingly engage[d] in conduct involving an intent to sell wildlife with a market value in excess of $350, ... by transporting said wildlife knowing it was taken in violation of United States law or regulation." The jury found Senchenko guilty and the district court denied his motion for acquittal. We have jurisdiction of his appeal under 28 U.S.C. § 1291, and we affirm.

## FACTS

During the two year period alleged in the indictment, between September 1993 and September 1995, government agents found or were directed to four illegal bear snares in Colville National Forest, Washington.

On October 17, 1994, a hunter reported seeing a bear carcass hanging from a snare cable. When officers examined the snare site on October 23, they found the carcass had been cut down, moved under some bushes and "harvested"; someone had removed the bear's front claws, skull and gall bladder. On September 15, 1995, wildlife officials revisited the site and found the snare had recently been reset. While returning to the main road nearest the snare site, the officers encountered a hunter about to drive away from the snare trail in a silver Isuzu Trooper; the hunter was later identified as Senchenko. From a check on the car's license plate, the agents learned the car was registered to Senchenko's son Gregory and found the family's address.

The officers tripped the snare, placed sensors along the path leading to it, and established a watch on the road closest to the snare site. On September 28, 1995, the officers observed a man park a silver Isuzu Trooper on the road near the head of the path. The path sensors were set off in sequence, and an officer watched a man reset the snare and walk back up the path. The sensor nearest to the road sounded some minutes later, after which the officers saw Senchenko emerge from the trail and approach the vehicle. At that point Senchenko was arrested, and the officer at the snare identified him as the man he had seen reset the trap mechanism.

Wildlife officers discovered three more snares in September 1993, September 1995, and November 1995. Based on similarities in design and construction, the government attributed all three to Senchenko. Federal agents obtained a search warrant for Senchenko's house and car on September 28, 1995. In the silver Isuzu Trooper they found rancid bear fat, a half-rotten pelt and nineteen black bear claws. Among the evidence found at the house were three dried bear gall bladders in Senchenko's briefcase, equipment needed to build snares, two bear pelts, a few teeth and more claws. In addition, officers found evidence that Senchenko had recently ordered 500 feet of steel wire cable.

## DISCUSSION

The Lacey Act makes it a federal offense "to transport ... any wildlife ... taken in violation of any law, treaty, or regulation of the United States." 16 U.S.C. § 3372(a)(1). A person who violates § 3372(a)(1) commits a

---

*  Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

felony "by knowingly engaging in conduct that involves ... the intent to sell ... wildlife ... with a market value in excess of $350." 16 U.S.C. § 3373(d)(1)(B). Senchenko was charged with violating 36 C.F.R. Part 261, which prohibits hunting or trapping any kind of wild animal in the National Forest System "to the extent Federal or State law is violated." 36 C.F.R. § 261.8(a) (1995). Snaring bears is prohibited by Washington state law, which allows big game to be hunted only with a firearm, bow and arrow, or by falconry. Wash. Admin.Code § 232–12–047.

■ In reviewing the denial of a motion for judgment of acquittal, we must determine whether, viewing the facts in the light most favorable to the judgment, a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *United States v. Castaneda,* 16 F.3d 1504, 1510–11 (9th Cir. 1994).

### A. *Intent to Sell*

■ Senchenko argues that there was no evidence that he ever sold or intended to sell bear parts. The government's evidence-four existing snares and the equipment Senchenko owned to make more-was sufficient to link Senchenko to snaring on a commercial scale. A bear caught in a snare attributable to Senchenko was harvested only for commercially valuable parts, consistent with the parts found in his possession. Senchenko's wife testified that when he hunted bears for the family, he would bring the meat home as well as the commercially valuable parts, but no bear meat was found among the fifty-plus packages of game tested by the government. The government showed that the amount of bear gall bladders possessed by Senchenko exceeded his family's personal needs. This was sufficient to permit the jury to infer commercial intent.

■ Senchenko argues that he was prejudiced by the government's drawing an analogy, during its closing argument, to possession of large quantities of narcotics, inviting the jury to infer from the volume of bear parts that they were intended for sale. Senchenko also claims the analogy led the jury to think of him as a drug dealer. Because Senchenko timely objected, the standard of review is

harmless error. *United States v. Hinton,* 31 F.3d 817, 824 (9th Cir.1994), *cert. denied,* 513 U.S. 1100, 115 S.Ct. 773, 130 L.Ed.2d 669 (1995).

■ When reviewing prosecutorial comments made during closing argument for harmless error, we must determine whether the comments, considered in the context of the entire trial, affected the jury's ability to judge the evidence fairly. *United States v. de Cruz,* 82 F.3d 856, 862 (9th Cir.1996). We find that they did not. The prosecutor compared Senchenko's possession of a large number of bear parts to narcotics only during closing argument, not during the presentation of evidence. *See Abromson v. American Pac. Corp.,* 114 F.3d 898, 903 (9th Cir. 1997) (citing cases giving greater latitude in closing arguments and finding harmless error). Immediately after introducing the analogy, the prosecutor told the jury "the defendant is not involved in drugs," and the judge properly instructed the jury that closing arguments are not evidence. Even if permitting the analogy to be offered was error, it was harmless. The analogy was not used as a substitute for proof: Senchenko's wife had already testified the family had used two gall bladders since November 1989, and may have been consuming a third when Senchenko was arrested. Relying solely on her testimony, a reasonable jury could decide that the three gall bladders in Senchenko's briefcase exceeded an amount intended for personal use.

### B. *Proof of Conduct Involving Intent to Sell Bear Parts Valued in Excess of $350*

#### 1. Statutory Interpretation

■ Senchenko contends that under the statute the government must prove "a single act of transportation" and that it improperly aggregated the value of bear parts found in Senchenko's car and house to arrive at the requisite value of $350. He does not contend that no transportation was involved; the evidence of bear parts found in his car in the vicinity of the bear traps, and for that matter in his house, permitted the jury to infer that transportation had occurred.

Senchenko reads more into the statute than its text warrants. The statute makes it a felony to "knowingly engag[e] in conduct that involves ... the intent to sell ... wildlife ... with a market value in excess of $350." 16 U.S.C. § 3373(d)(1)(B). Transporting is merely one of several types of conduct-in addition to selling, receiving, acquiring and purchasing-banned by the act. As the statute makes clear, the focus is on conduct that involves commercial activity. The Senate report explained that the purpose behind the creation of a felony offense was to punish "unlawful commercial activity involving items valued at more than $350." S.Rep. No. 97–123, 3 (1981), *reprinted in* 1981 U.S.C.C.A.N. 1748, 1750, and that the offense is made out by proof of the defendant's knowledge of the wildlife's illegal nature and "proof of commercial activity or intent, and proof of the fact that the [wildlife] had a market value in excess of $350." S.Rep. No. 97–123 at 11–12; 1981 U.S.C.C.A.N. at 1758–59.

This is not a case in which the government aggregated distinctly separate acts or transactions to meet the jurisdictional minimum; indeed, the evidence does not reflect such separate acts or transaction. To the contrary, Senchenko's conduct of setting snares, harvesting trapped bears and taking the parts to his house comprises a series of acts forming "a single continuing scheme." *United ed States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir.1989) (aggregating heroin sales in single count). *See also Schaffer v. United States*, 362 U.S. 511, 517, 80 S.Ct. 945, 948–49, 4 L.Ed.2d 921 (1960), where the Court said that "[a] sensible reading of the statute properly attributes to Congress the view that where the shipments have enough relationship so that they may properly be charged as a single offense their value may be aggregated." Although stated with reference to somewhat different statutory language,[1] the rationale is applicable here. Congress intended to punish conduct constituting commercial activity involving parts valued in excess of $350. Where the acts forming that conduct are closely related, the total value of the parts involved is properly taken into account. Here three dried gall bladders found in Senchenko's briefcase, which presumably had to be transported to the house, and which weighed six, eight and eleven grams apiece, placing their cumulative value at $625 to $750, had "enough relationship" to be charged as a single offense.

2. Evidence of Value

■ Senchenko contends that the government's expert witness was not competent to establish market values of bear parts in Eastern Washington. The expert witness, Washington State Wildlife officer Harold Holste, had been a state wildlife officer for twenty-four years and had been investigating illegal sales of wildlife for seven. Under Fed.R.Evid. 702, he was qualified by experience and training to testify. *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir.1997). While Senchenko's argument may go to the weight of Holste's testimony, it does not undermine its admissibility. *United States v. Fleishman*, 684 F.2d 1329, 1336 (9th Cir.1982) (noting that defense's argument relates to the weight accorded to the expert testimony, not its admissibility under Rule 702). Admitting Holste's testimony of market values was not error.

■ Senchenko also argues that Holste's testimony should be disregarded because it was irrelevant. Another government expert, Joanne Shafer, testified that the medicinal use of the gall bladders derives from the bile salts they contain, and that in her experience the product was often marketed as bile salt rather than gall bladder. Thus, Senchenko argues, Holste's testimony regarding market values of gall bladders was superfluous and prejudicial. Sufficient evidence existed, however, to establish the sale of gall bladders themselves, and Holste's testimony clearly related to the price of the organ.

1. *Schaffer* arose under a statute prohibiting the interstate transportation of stolen securities valued at more than $5,000. The statute defined "value" as the "aggregate value of all ... securities ... referred to in a single indictment." *See* 18 U.S.C. § 2311. 362 U.S. at 512, 80 S.Ct. at 946. The statute did not define, however, what acts of interstate transportation of securities could be aggregated within a single indictment.

Finally Senchenko attacks the valuation of the seized parts. Citing *United States v. Seaman*, 18 F.3d 649 (9th Cir.1994), he contends that the government improperly used the value of the finished goods, i.e. the dried gall bladders, rather than the value of the raw materials, i.e. the wet gall bladders, at the time they were initially taken by him. In *Seaman*, the court overturned the defendants' convictions under 18 U.S.C. § 1361 because the government improperly used the valuation of finished goods (firewood that had been chopped, packaged and seasoned) rather than the valuation of the goods taken from government property (felled trees) to meet the requisite jurisdictional amount. *Id.* at 651. *Seaman* stands for the proposition that the government cannot consider value added in establishing the jurisdictional amount. The present case is distinguishable from *Seaman;* here, Senchenko did not process the wet gall bladders but merely permitted them to dry. There is sufficient evidence of the value of the unprocessed bear parts, from $625 to $750, to sustain the verdict.

### C.   *Federal Jurisdiction*

Senchenko contends that the indictment should have been dismissed for failing to charge a federal offense. He contends that the underlying regulation which he is charged with having violated, 36 C.F.R. § 261.8, is unconstitutional under Article I, vesting all legislative powers in the Congress, because it allows the violation of state law to become the basis of a federal offense. The argument is without merit, having been rejected by the courts of appeals applying the Lacey Act. *See United States v. Lee*, 937 F.2d 1388, 1393–94 (9th Cir.1991) (incorporation of foreign law in Lacey Act is constitutional); *United States v. Bryant*, 716 F.2d 1091, 1094–95 (6th Cir.1983) (incorporation of state law in Lacey Act is constitutional).

### D.   *Probable Cause to Search Senchenko's House* and Car

Senchenko contends that the evidence seized in his home and car should have been suppressed because the warrant was issued on an affidavit that incorrectly stated that Senchenko was arrested while resetting the snare, while in reality he had been arrested at the top of the trail some distance from the snare. Senchenko argues that, had the court "set to one side" the false statement, probable cause would disappear.

The district court, after holding a *Franks* hearing, found that the errors were not made "deliberately or recklessly." We uphold this finding unless clearly erroneous. *United States v. Dozier*, 844 F.2d 701, 705 (9th Cir. 1988). The threshold determination in a *Franks* hearing is whether erroneous statements or omissions in an affidavit supporting a search warrant were made "knowingly and intentionally, or with reckless disregard for the truth." *Franks*, 438 U.S. at 155, 98 S.Ct. at 2676. If such a finding is made, the court then determines whether "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." *Id.* at 156, 98 S.Ct. at 2676.

There was no clear error; the court considered the testifying officers to be "candid and forthright." The court was satisfied that the affidavit of federal agent Roger Parker reflected his understanding of Senchenko's arrest. The court therefore found that the affiant lacked the "high degree of awareness of probable falsity" that a finding of recklessness would require. Because the challenged statements or omissions were neither knowingly nor recklessly false, the motion was properly denied and no further inquiry into materiality was necessary. *See, e.g., United States v. Warren*, 42 F.3d 647, 653 (D.C.Cir. 1994) (finding a misstatement to be immaterial and therefore not reaching the mental state issue).

### E.   *Admission of Prejudicial Testimony*

Senchenko's final argument is that the district court erred in permitting the government to ask his wife on cross-examination about his lack of employment. He timely objected to the testimony at trial, and we review the evidentiary ruling for abuse of discretion. *United States v. Mende*, 43 F.3d 1298, 1301–02 (9th Cir.1995).

The inquiry into Senchenko's employment status was relevant to support an inference that Senchenko had a commercial intent to sell bear parts. Thus, the district court did

**1159**

not abuse its discretion in permitting testimony that the defendant was unemployed.

The judgment is affirmed.