**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Richard Wesley ELLIOTT, Defendant–Appellant.**

**No. 02–30075.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 10, 2003.

Filed March 10, 2003.

Craig E. Weinerman, Assistant Federal Public Defender, Eugene, OR, for the defendant-appellant.

Frank R. Papagni, Jr., Assistant United States Attorney, Eugene, OR, for the plaintiff-appellee.

Appeal from the United States District Court for the District of Oregon; Michael R. Hogan, Chief District Judge, Presiding. D.C. No. CR–01–60005–MRH.

Before: WALLACE, TROTT and TASHIMA, Circuit Judges.

TROTT, Circuit Judge.

Richard Wesley Elliott entered a conditional guilty plea to one count of being an Armed Career Criminal, 28 U.S.C. § 922(g)(1). He appeals the district court's denial of his motion to suppress evidence seized during execution of a search warrant. Elliott argues that the district court erred in finding (1) that police officers did not intentionally or recklessly omit or make false statements in the search warrant affidavit, and (2) that the

affidavit established probable cause to search his person wherever he could be found. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I

## FACTS

On November 29, 2000, Officer Ben Kempke obtained a warrant to search for controlled substances, weapons, and other items at a residence in Myrtle Creek, Oregon (the "Kelly residence"). The warrant also authorized searches of Elliott, Ross Kelly, and Shane Benedict, regardless of whether they were at the Kelly residence.

The search warrant affidavit Officer Kempke had submitted to the magistrate (the "affidavit") largely relied on information provided by a confidential informant, later identified as Sean Lindsey. We summarize the following pertinent information conveyed in the affidavit:

1. Lindsey had visited the Kelly residence on two occasions in the preceding ten days and saw weighing scales and at least one ounce of methamphetamine in the "possession" of Elliott, Kelly, and Benedict;

2. Elliott, Kelly, and Benedict had talked about their methamphetamine sales and possession with Lindsey;

3. Lindsey gave the information to Officer Kempke "in hopes of receiving unspecified consideration on current charges" pending against him;

4. Lindsey's criminal history revealed numerous arrests, but none for crimes related to false information to police or perjury;

5. In the preceding three months Lindsey had provided information that resulted in the arrest of at least six persons on felony drug charges and

the seizure of methamphetamine and marijuana; and

6. That based on Officer Kempke's training and experience, "it is common for persons involved with the illegal manufacture/ delivery/ and possession of controlled substances to keep controlled substances and related evidence in their homes, on their person, and in their vehicles."

Officer Kempke and other officers executed the search warrant the following day and seized methamphetamine, scales, and packaging material from the Kelly residence. Elliott was not at the Kelly residence but police eventually obtained consent to search another residence where they found Elliott. When the police searched Elliott they found and seized a .380 caliber semi-automatic pistol that he was carrying.

After being charged as an Armed Career Criminal, Elliott tried to suppress the handgun from evidence on the grounds that the affidavit (1) misstated Lindsey's tip, and (2) misstated and omitted information about Lindsey's criminal history and motives. In response to Elliott's claims, the district court conducted a hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to determine whether the affidavit contained any false or omitted information, and if so, whether the error was made intentionally or recklessly.

To show that the affidavit misstated Lindsey's information, Elliott offered the testimony of his investigators who had interviewed Lindsey. When the investigators confronted Lindsey with the affidavit he told them that it falsely portrayed the information he provided Officer Kempke. However, when Lindsey testified at the hearing he claimed that he had lied to the investigators and that the affidavit accurately reflected the tip he gave Officer Kempke.

In his testimony, Officer Kempke conceded that Lindsey did not use the word "possession" when describing Elliott's relationship to the methamphetamine. He testified that according to Lindsey's tip, Lindsey had seen an ounce of methamphetamine and weighing scales on the living room coffee table, and that "the drugs were right in front of them" as Lindsey sat and talked with Elliott, Kelly, and Benedict about the drugs and drug sales. Officer Kempke explained that he used the term "possession" in its legal definition.

To show that the affidavit misstated or omitted Lindsey's criminal history and motives, Elliott presented a copy of Lindsey's criminal history that showed fourteen prior convictions, not mere arrests as the affidavit stated, and an arrest for forgery, a crime of dishonesty that had not been disclosed in the affidavit. Elliott presented testimony from his investigators that Lindsey also had told them that the consideration he sought was not "unspecified," but that he hoped to get his child back and receive help on federal Armed Career Criminal charges.

The district court found that the affidavit did not misstate Lindsey's tip, and that the misstatements and omissions about Lindsey's criminal history and motives were not intentionally or recklessly made. The district court also found that despite Lindsey's undisclosed criminal history, his tip to Officer Kempke was sufficiently reliable because of the six tips leading to arrests that he provided in the preceding three months. Ultimately, the district court found that there was probable cause to search Elliott away from the Kelly residence.

## II

### FALSE OR OMITTED STATEMENTS

In the face of allegations that a search warrant affidavit contained inaccurate information affecting probable cause, a district court must apply a two-step analysis to determine whether a search warrant was supported by probable cause. First, after holding a *Franks* hearing, the district court must determine whether any "erroneous statements or omissions" in the search warrant affidavit "were made knowingly and intentionally, or with reckless disregard for the truth." *United States v. Senchenko*, 133 F.3d 1153, 1158 (9th Cir. 1998) (quoting *Franks*, 438 U.S. at 155–56, 98 S.Ct. 2674). If the district court so finds, it must then determine whether "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." *Senchenko*, 133 F.3d at 1158.

We review for clear error the district court's findings whether any statements were false or omitted and whether any such statements were intentionally or recklessly made. *Id.* Review under the clearly erroneous standard is significantly deferential, "requiring for reversal a definite and firm conviction that a mistake has been committed." *United States v. Maldonado*, 215 F.3d 1046, 1050 (9th Cir.2000) (citation omitted). We review de novo the district court's determination "[w]hether probable cause is lacking because of alleged misstatements or omissions in the supporting affidavit." *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir.2000). Whether any omissions or misstatements are material is a mixed question of law and fact which we also review de novo. *United States v. Garza*, 980 F.2d 546, 551 (9th Cir.1992).

### A. Accurate Portrayal of the Informant's Tip

Elliott argues that the district court clearly erred in finding that the

search warrant affidavit prepared by Officer Kempke did not intentionally or recklessly misrepresent the information provided by Lindsey. He points to Officer Kempke's testimony that Lindsey never actually used the word "possession" when describing Elliott's relationship to the methamphetamine and weighing scales. We see no material falsity in Officer Kempke's use of the word "possession" to describe the information Lindsey had given him. Lindsey told Officer Kempke that he saw an ounce of methamphetamine and weighing scales on the living room coffee table, and that "the drugs were right in front of them" as Lindsey sat and talked with Elliott, Kelly, and Benedict about the drugs and drug sales. We have long held that "a person is in 'possession' of something 'if the person knows of its presence and has physical control of it, or has the power and intention to control it.'" *United States v. Cain*, 130 F.3d 381, 382 (9th Cir.1997) (citations and emphasis omitted). While the affidavit could have been more specific, the information Lindsey presented to Officer Kempke was consistent with Elliott's presence and control over the drugs and scales. We cannot conclude that the accurate use of a legal term constitutes a materially false statement.

■ Elliott also points to Lindsey's unsworn statements to defense investigators that the affidavit misstated his tip as proof that the affidavit contained false information. However, Lindsey's sworn testimony that he lied to the investigators and that the affidavit was indeed accurate supports the district court's finding that the affidavit did not misstate his tip. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Working*, 224 F.3d 1093, 1102 (9th Cir. 2000) (en banc). Moreover, the district court found Lindsey's testimony at the hearing to be credible, and we pay special deference to a trial court's credibility findings. *United States v. Nelson*, 137 F.3d 1094, 1110 (9th Cir.1998). Thus, we do not have a "definite and firm conviction" that the district court made a mistake in finding that the affidavit did not intentionally or recklessly misstate Lindsey's information. *Maldonado*, 215 F.3d at 1050.

## B. Accurate Portrayal of the Informant's History and Motives

Elliott next argues that the district court clearly erred in finding that Officer Kempke, in preparing the affidavit, did not intentionally or recklessly describe (1) Lindsey's criminal history, (2) his personal conduct while he was acting as an informant, and (3) the exact consideration he was seeking from the police. Even assuming *arguendo* under the first step of the *Franks* analysis that the district court's finding was clearly erroneous, we conclude under the second step that the affidavit nonetheless established probable cause.

■ Probable cause to search exists when there is a " 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (alteration in original) (citation omitted). "It is well-settled that the determination of probable cause is based upon the totality of the circumstances known to the officers at the time of the search." *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir.2001) (citing *Gates*, 462 U.S. at 238, 103 S.Ct. 2317). When a search warrant is based solely on an informant's tip, as in this case, "the proper analysis is whether probable cause exists from the totality of the circumstances to determine a sufficient level of reliability and basis of knowledge for the tip." *Id.* at 924. In this case, Elliott does not chal-

lenge Lindsey's basis of knowledge, but challenges only Lindsey's credibility.

■■■■ "Any crime involving dishonesty necessarily has an adverse effect on an informant's credibility." *Reeves*, 210 F.3d at 1045. Therefore, when an informant's criminal history includes crimes of dishonesty, additional evidence must be included in the affidavit "to bolster the informant's credibility or the reliability of the tip." *Id.* Otherwise, "an informant's criminal past involving dishonesty is fatal to the reliability of the informant's information, and his/her testimony cannot support probable cause." *Id.* (citing *United States v. Meling*, 47 F.3d 1546, 1554–55 (9th Cir.1995)).

Lindsey's record of providing six reliable drug-related tips in the preceding three months was sufficient to overcome any doubts raised by his motives and prior criminal and personal behavior. *See Reeves*, 210 F.3d at 1044–45 (three prior reliable tips leading to arrests and drug seizures were "sufficient to outweigh the doubts about the informant's credibility raised by the [undisclosed] history of criminal conduct involving dishonesty"); *see also United States v. Angulo–Lopez*, 791 F.2d 1394, 1397· (9th Cir.1986) (an informant may be presumed trustworthy when he has previously provided accurate information, and the inference of trustworthiness is even stronger "[w]hen the information provided in the past involved the same type of criminal activity as the current information") (citations omitted). Thus, probable cause was not lacking to issue a warrant to search Elliott.

## III

## PROBABLE CAUSE TO SEARCH ELLIOTT IN PLACES OTHER THAN THE KELLY RESIDENCE

■■■ Elliott argues that Officer Kempke's generalized statement in the affidavit that drug traffickers commonly keep "controlled substances and related evidence ... on their person" was insufficient to overcome the lack of evidence that Elliott engaged in drug trafficking outside the Kelly residence, and thus was insufficient to establish probable cause to search him anywhere but at the Kelly residence. We are not persuaded by this argument. First, his argument misses the mark— probable cause to believe that a person *conducts* illegal activities in the place where he is to be searched is not necessary; the proper inquiry is whether there was probable cause to believe that *evidence* of illegal activity would be found in the search. *Gates*, 462 U.S. at 235, 103 S.Ct. 2317.

More importantly, we faced a very similar issue in *United States v. Spearman*, 532 F.2d 132, 133 (9th Cir.1976). In *Spearman*, police sought a warrant to search the defendant's automobile. The affidavit stated that the defendant had engaged in drug-related activity at his apartment, however, there was no specific information that drugs were ever in the defendant's automobile. The affidavit stated, as in this case, that "[i]t is commonplace for dealers of heroin to have heroin that is packaged for sale in the place where they live or sell from, in their vehicles or on their persons." *Id.* We held that "the magistrate was justified in inferring probable cause that Spearman would also have heroin concealed in his automobile." *Id.*

■■■■ "A magistrate is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *Angulo–Lopez*, 791 F.2d at 1399. We see no difference between the inferences the magistrate could draw from the affidavit in *Spearman* and those the magistrate could draw from the affidavit in this

case. The distinction that *Spearman* involved an automobile search whereas this case involves the search of a person is immaterial to the ultimate question of whether there was a "substantial basis" for concluding that evidence would be found in the search. *See Gates,* 462 U.S. at 235, 103 S.Ct. 2317. The combined effect of information about Elliott's recent drug activity and the declaration that drug traffickers commonly carry related evidence on their person allows a reasonable inference that evidence was likely to be kept on Elliott's person. Accordingly, the search warrant was supported by probable cause to search Elliott even when he was away from the Kelly residence.

AFFIRMED.