**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT**

In re:                              )  BAP No.   AZ-17-1071-FSKu
                                    )
PATRICIA MARCELLO ANDERSON          )  Bk. No.   14-bk-12221-GBN
and ANTHONY MARCUS ANDERSON,        )
                                    )  Adv. Pro. 14-ap-00927-GBN
                 Debtors.           )
_____ )
                                    )
CWB HOLDINGS, LLC,                  )
                                    )
                 Appellant,         )
                                    )
v.                                  )  **MEMORANDUM**[*]
                                    )
PATRICIA MARCELLO ANDERSON;         )
ANTHONY MARCUS ANDERSON,            )
                                    )
                 Appellees.         )
_____ )

Argued and Submitted on October 26, 2017
at Phoenix, Arizona

Filed – November 7, 2017

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable George B. Nielsen, Jr., Bankruptcy Judge, Presiding

_____

Appearances:   Patrick J. Davis of Fidelity National Law Group
               argued on behalf of appellant CWB Holdings, LLC;
               Amy Sells of Tiffany & Bosco, P.A. argued on
               behalf of appellees Patricia Marcello Anderson and
               Anthony Marcus Anderson.

_____

Before: FARIS, SPRAKER, and KURTZ, Bankruptcy Judges.

_____

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, see Fed. R. App. P. 32.1, it has no precedential value, see 9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

CWB Holdings, LLC ("CWB") recovered a judgment in state court against Patricia Marcello Anderson and Anthony Marcus Anderson for their wrongful recordation and refusal to remove two lis pendens against CWB's property. After the Andersons filed a chapter 7[1] bankruptcy petition, CWB argued that the judgment debt is not dischargeable under § 523(a)(6). The bankruptcy court ruled that the state court judgment precluded relitigation of all issues other than the Andersons' mental state; more precisely, the court ruled that a trial was necessary to decide whether they had relied on the advice of counsel.

After the trial, the court found that CWB did not establish the Andersons' scienter, because the Andersons' reliance on the advice of counsel negated the requisite mental state. Although other courts may have found differently, we cannot say that the bankruptcy court committed clear error when it found that the Andersons relied on their attorneys' advice.

We AFFIRM.

**FACTUAL BACKGROUND**[2]

**A.    Prepetition events**

**1.    The real property sale**

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] We exercise our discretion to review the documents on the bankruptcy court's electronic docket. See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.), 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008). We additionally rely on the Arizona appellate court's factual recitation in CWB Holdings, LLC v. Anderson, No. 1 CA-CV 10-0791, 2011 WL 6210526 (Ariz. Ct. App. Dec. 13, 2011).

Mr. Anderson is a sophisticated entrepreneur in the business of mergers and acquisitions. In 2002, he set up a wealth protection plan for the benefit of his children. Property in the plan included two parcels of real property located at 8723 E. Via de Commercio, Scottsdale, Arizona.

In 2005, Mr. Anderson sought to acquire the adjacent real property located at 8727 E. Via de Commercio (the "Property"), then owned by Frederick and Barbara Dettmann, for inclusion in the wealth protection plan. According to Mr. Anderson, he reached an oral agreement to purchase the Property for $625,000 and established 8727 E. Via de Commercio, LLC ("8727 LLC") for this purpose. However, the Andersons did not have a written purchase agreement with the Dettmanns.

The Dettmanns instead agreed to sell the Property to CWB for $660,000. They conveyed the Property to CWB via special warranty deed recorded on February 8, 2006.

**2.    The specific performance action**

Earlier that day, the Andersons filed a complaint against the Dettmanns in Arizona state court, seeking specific performance of the alleged contract to buy the Property for $625,000 (the "Specific Performance Action"). About twenty minutes before the deed from the Dettmanns to CWB was recorded, the Andersons filed and recorded a lis pendens against the Property (the "2006 lis pendens").

By letter dated February 10, 2006, CWB's attorneys demanded that Mr. Anderson release the 2006 lis pendens. By a second letter dated February 16, 2006, CWB requested that the Andersons execute a quitclaim deed. Mr. Anderson did not comply.

3

With the state court's permission, the Andersons filed an amended complaint, substituting 8727 LLC as the plaintiff in place of the Andersons personally and adding CWB as a defendant. The amended complaint alleged breach of contract against the Dettmanns and constructive trust against CWB and dropped the prayer for specific performance.

In January 2007, the court dismissed the Specific Performance Action for lack of prosecution. CWB requested again that Mr. Anderson remove the 2006 lis pendens. The Andersons did not comply. Instead, 8727 LLC successfully moved the court to reinstate the case.

### 3. The wrongful recordation action

On May 31, 2007, CWB again requested in writing that Mr. Anderson remove the 2006 lis pendens and execute a quitclaim deed. When Mr. Anderson did not comply, CWB filed a state-court complaint against the Andersons for wrongful recordation and quiet title (the "Wrongful Recordation Action").

In response, the Andersons, acting through their counsel Wilenchik & Bartness, recorded a second notice of lis pendens in October 2007 (the "2007 lis pendens"). Although the Andersons had been prepared to release the 2006 lis pendens and "go home," they changed their mind when CWB personally named them in the Wrongful Recordation Action.[3]

---

[3] Mr. Anderson said that he was prepared to release the 2006 lis pendens because of the expense of litigation but changed his mind when CWB sued him. Mr. Anderson claimed that he viewed the suit against him personally as an attempt to "punch through my kids['] trust and take their assets."

4

**4. Summary judgment in the specific performance action**

In November 2007, the Dettmanns moved for summary judgment in the Specific Performance Action, arguing that the Andersons and 8727 LLC could not establish the existence of a contract with the Dettmanns. The court granted the motion by minute order.

In March 2008, the state court consolidated the Specific Performance Action with the Wrongful Recordation Action.

On April 1, 2008, the court entered judgment against the Andersons in the Specific Performance Action and ordered the Andersons to remove the lis pendens within ten days:

> CWB is the lawful owner of the [Property] . . . [the Andersons and 8727] have no right, title or interest in the Property. The Court hereby quashes and renders null and void any and all lis pendens recorded by [the Andersons and 8727] against the Property. Notwithstanding the foregoing, the Court orders [the Andersons and 8727] to remove any and all lis pendens any of them have filed against the Property by filing and recording sufficient Notices of Removal of Lis Pendens with the Maricopa County Recorder within ten (10) days of the date of this Judgment.

CWB sent the Andersons' counsel another letter on April 8, 2008 demanding removal of the lis pendens. The Andersons did not comply with either the letter or the court order. Mr. Anderson and his attorneys – at that time, Dennis Wilenchik and Amy Sells (nee Reyes) – decided that they did not need to comply with the order and remove the two lis pendens because the judgment was not final. Rather than comply, the Andersons filed a motion to amend the judgment. The court denied that motion in June 2008.

On June 20, 2008, CWB sent another letter to the Andersons asking that they remove the lis pendens. The Andersons did not comply.

**5.    The order to show cause and release of the lis pendens**

On July 1, 2008, the court issued an order to show cause (the "OSC") why 8727 LLC and the Andersons should not be held in contempt for failing to remove the lis pendens. The hearing date on the OSC was August 7.

On July 31, the Andersons and 8727 LLC filed releases of the lis pendens. Mr. Anderson claimed that he still did not believe that he needed to release the lis pendens and that he did so as "a courtesy."

The Andersons and 8727 LLC also filed a notice of appeal in the Specific Performance Action. They challenged only the entry of judgment against them personally and did not attack the portion of the judgment requiring them to release the lis pendens. In November 2009, the Arizona appeals court vacated the judgment as to the Andersons; as such, the Andersons were not personally liable on the judgment.

**6.    Summary judgment in the wrongful recordation action**

In December 2008, CWB filed a motion for partial summary judgment on liability as to the wrongful recordation. CWB argued that, in light of the court's grant of summary judgment in the Specific Performance Action and the finding that no agreement existed between the parties, the Andersons must have known that the lis pendens were groundless or otherwise invalid.

Following a hearing, the court granted the motion for partial summary judgment, holding the Andersons liable for wrongfully recording the lis pendens. After a trial, a jury awarded actual damages of $180,000 to CWB and against the Andersons. The court awarded CWB treble damages under Arizona

6

Revised Statutes section 33-420(A) and (C), for a total of $540,000 plus fees and costs (the "Judgment").

The Andersons appealed the Judgment, but the Arizona court of appeals affirmed it in its entirety.

**B.    Bankruptcy events**

**1.    CWB's § 523(a)(6) claim**

In August 2014, the Andersons filed a chapter 7 petition in the United States Bankruptcy Court for the District of Arizona. CWB filed an adversary proceeding seeking a determination of nondischargeability of the Judgment under §§ 523(a)(2)(A) and (6) and denial of discharge under § 727(a)(2)(A).

**2.    Motion for summary judgment**

CWB filed a motion for partial summary judgment on its § 523(a)(6) claim ("Motion for Summary Judgment").  It argued that the Judgment precluded the Andersons from relitigating the same issues raised in the Wrongful Recordation Action, including willful and malicious injury, and that, regardless of issue preclusion, the Andersons' actions were willful and malicious.

As to the application of issue preclusion, CWB argued that the Judgment established all of the elements of § 523(a)(6). Liability under section 33-420(C) of the Arizona Revised Statutes requires that a person "wilfully refuses to release or correct" a recorded document that encumbers real property "when that person knows that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid." CWB argued that "the Andersons willfully refused to release the lis pendens even after the State Court ordered them to do so. Only when faced with a show cause hearing did the Andersons

7

finally release the lis pendens — 29 months after the first demand to release had been made." It also argued that the Andersons acted maliciously because they wrongfully recorded the lis pendens; they intentionally refused to release the lis pendens, even though the state court said it was groundless; there was no just cause or excuse; and the state court determined that CWB suffered actual damages.

CWB alternatively argued that, even if the court did not apply issue preclusion, the undisputed facts demonstrated that the Andersons' actions resulted in willful and malicious injury.

In opposition, the Andersons argued that "[t]here was no discussion by the Court or by the jury as to the issue of 'willful and malicious' actions by the Defendants." They also claimed that section 33-420 required only a willful act, not a malicious act. They asserted that their actions were not malicious and argued that they acted on the advice of their attorneys: "Upon advice of counsel, we did not release the Notice of Lis Pendens based upon his recommendation that we appeal the judgment . . . ."

At the hearing on the Motion for Summary Judgment, the bankruptcy court granted the motion in part, holding that CWB had established all elements of § 523(a)(6) except the issue of the Andersons' scienter. It recited the extensive facts of the case and stated:

> Under these facts I have little difficulty in concluding that the Plaintiff has established sufficient evidence here for a finding of summary judgment, but there's a nagging problem here that's loose and that is the advice of counsel defense. Again, the Plaintiff has established a strong record for granting summary judgment, but as noted by the

8

State Court of Appeals and interpreting A.R.S. 33-420 liability is imposed only if the person causing the filing of the invalid document knows or has reason to know the document is invalid, thereby mandating the finding of scienter on the part of the person causing the filing.

The court expressed skepticism that the Andersons could establish that they relied on the advice of their counsel, but it nevertheless determined that a trial was necessary.

### 3. Trial

Only Mr. Anderson and attorney Dennis Wilenchik (who represented the Andersons between late 2007 and July of 2008) testified at trial.

Mr. Wilenchik's representation spanned the period including the filing of the 2007 lis pendens, the state court's January 25, 2008 minute order dismissing the Andersons' Specific Performance Action, the April 1, 2008 judgment ordering the Andersons to remove the lis pendens within ten days, the July 2008 OSC, and the eventual removal of the lis pendens in July 2008. Mr. Wilenchik testified that he had no recollection of any discussion with the Andersons about removing the lis pendens, nor did he recall ever advising the Andersons not to release the lis pendens. Rather, he testified that the decision to remove the lis pendens was up to the attorney – not the clients - and that he would not have removed the lis pendens, even if Mr. Anderson had instructed him to do so:

I don't believe I would have gone to the Andersons and consulted them as to whether it should be released or not. I would have probably, if anything, told them this is the way I see it, if it came up. I don't recall it coming up quite honestly and I certainly don't recall them dictating to me nor would I listen to it as to what I should do with it.

9

Mr. Wilenchik testified that he did not believe that he had to remove the lis pendens - even in the face of the state court's order - because he had filed a postjudgment motion to amend. He thus thought that it was not necessary to either remove the lis pendens within ten days or seek a motion to stay pending appeal.

Mr. Anderson gave somewhat shifting testimony. He stated that he could not recall any specific conversation with Mr. Wilenchik about removing the lis pendens, but he recalled discussing the matter with Mr. Wilenchik's then-associate, Amy Sells.[4] He could not remember any specific conversations or advice, but testified that they determined that they would not release the lis pendens. He said that the attorneys conveyed "[t]hat it would be a mistake" to do so.

Regarding advice by other attorneys, Mr. Anderson gave ambiguous testimony about whether any of his prior attorneys had advised him not to release the lis pendens earlier: "it wasn't nice, neat conversations where they said, I advise you this, it was merely you handled the case as the attorneys, you know, you did what you think is right, that really was the nature of the advice or the guidance. It wasn't conversations where they say, I advise you. It wasn't that nice and convenient."

After the parties submitted written closing briefs and oral closing argument, the court announced its findings of fact and conclusions of law. While the court did not agree with Mr. Wilenchik's legal views, it found his testimony credible and

[4] Counsel for CWB pointed out that Mr. Anderson had previously testified at his deposition that there were no conversations between April 1, 2008 and July 31, 2008.

10

that, while Mr. Wilenchik did not recall ever advising Mr. Anderson not to release the lien, he must have somehow communicated that belief to Mr. Anderson. The bankruptcy court concluded:

> As I've indicated, the advice of counsel issue is not strongly established by the Defense, but I believe it was established clearly, that is Mr. Wilenchik's opinion on these matters and clearly in some manner Mr. Anderson gained that understanding as well and it's very clear to the fact finder that he never received advice from his attorney that he should release the lis pendens sooner than the date that he actually did so, which was done for economic reasons.

The bankruptcy court issued its final judgment (with Civil Rule 54(b) certification) dismissing CWB's § 523(a)(6) claim. CWB timely filed its notice of appeal.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the bankruptcy court erred in declining to apply issue preclusion to the issue of scienter.

(2) Whether the bankruptcy court erred in dismissing CWB's § 523(a)(6) claim based on its finding that the Andersons lacked willful and malicious intent in refusing to remove the lis pendens because they relied on the advice of their counsel.

## STANDARDS OF REVIEW

In bankruptcy discharge appeals after trial, we review the bankruptcy court's findings of fact for clear error and conclusions of law de novo, and we apply de novo review to mixed questions of law and fact. Oney v. Weinberg (In re Weinberg),

11

410 B.R. 19, 28 (9th Cir. BAP 2009), aff'd, 407 F. App'x 176 (9th Cir. 2010) (citation omitted). De novo review requires that we consider a matter anew, as if no decision had been rendered previously. United States v. Silverman, 861 F.2d 571, 576 (9th Cir. 1988).

A factual finding is clearly erroneous if, after examining the evidence, the reviewing court "is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985). "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." Papio Keno Club, Inc. v. City of Papillion (In re Papio Keno Club, Inc.), 262 F.3d 725, 729 (8th Cir. 2001) (quoting Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir. 1988)). The bankruptcy court's choice among multiple plausible views of the evidence cannot be clear error. United States v. Elliott, 322 F.3d 710, 714 (9th Cir. 2003).

The availability of issue preclusion is reviewed de novo, but "[i]f issue preclusion is available, the decision to apply it is reviewed for abuse of discretion." Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 103 (9th Cir. BAP 2007) (citations omitted). To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in

12

inferences that may be drawn from the facts in the record. <u>United States v. Hinkson</u>, 585 F.3d 1247, 1262–63 & n.21 (9th Cir. 2009) (en banc).

**DISCUSSION**

**A. The bankruptcy court did not err in declining to apply issue preclusion to the question of the Andersons' scienter.**

CWB argues that the bankruptcy court erred in refusing to apply issue preclusion to the question of the Andersons' scienter because the state court had already determined their willful and malicious intent. We disagree.

The doctrine of issue preclusion prohibits relitigation of issues that have been adjudicated in a prior action. <u>In re Lopez</u>, 367 B.R. at 104. The party asserting issue preclusion bears the burden of proof as to all elements and must introduce a sufficient record to reveal the controlling facts and the exact issues litigated. <u>Kelly v. Okoye (In re Kelly)</u>, 182 B.R. 255, 258 (9th Cir. BAP 1995), <u>aff'd</u>, 100 F.3d 110 (9th Cir. 1996). "Any reasonable doubt as to what was decided by a prior judgment should be resolved against allowing the [issue preclusive] effect." <u>Id.</u>

Issue preclusion applies in nondischargeability litigation. <u>Grogan v. Garner</u>, 498 U.S. 279, 284–285 (1991). A bankruptcy court may rely on the issue preclusive effect of an existing state court judgment as the basis for granting summary judgment. <u>See</u> <u>Khaligh v. Hadaegh (In re Khaligh)</u>, 338 B.R. 817, 831–32 (9th Cir. BAP 2006). In so doing, the bankruptcy court must apply the forum state's law of issue preclusion. <u>Harmon v. Kobrin (In re Harmon)</u>, 250 F.3d 1240, 1245 (9th Cir. 2001); <u>see</u>

28 U.S.C. § 1738 (federal courts must give "full faith and credit" to state court judgments). Accordingly, we apply Arizona's law of issue preclusion.

In Arizona, "issue preclusion is applicable when the issue or fact to be litigated was actually litigated in a previous suit, a final judgment was entered, and the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter and actually did litigate it, provided such issue or fact was essential to the prior judgment." Chaney Bldg. Co. v. City of Tucson, 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986) (en banc).

However, Arizona recognizes that, "even in cases in which the technical requirements for the application of collateral estoppel are met, courts do not preclude issues when special circumstances exist." Hullett v. Cousin, 204 Ariz. 292, 298, 63 P.3d 1029, 1035 (2003) (en banc) (citing Ferris v. Hawkins, 135 Ariz. 329, 331, 660 P.2d 1256, 1258 (App. 1983) ("Principles of issue preclusion should not be applied . . . where 'there is some overriding consideration of fairness to a litigant, which the circumstances of the particular case would dictate.'")); see Kirkland v. Barnes (In re Kirkland), BAP No. AZ-08-1143-EMoMk, 2008 WL 8444824, at *7-8 (9th Cir. BAP Nov. 26, 2008) ("Even when the threshold requirements for issue preclusion are met, its application may not be appropriate when the policies of judicial economy and avoidance of inconsistent results are outweighed by other substantive policies[.]").

In the present case, CWB sought to give issue preclusive effect to the state court's Judgment against the Andersons under

14

section 33-420, in order to avoid relitigation of its § 523(a)(6) claim. We must compare the elements of § 523(a)(6) with the state court's rulings under section 33-420.

Section 523(a)(6) renders nondischargeable any debt arising from "willful and malicious injury by the debtor to another entity or to the property of another entity." § 523(a)(6). The "willful" and "malicious" requirements are conjunctive and subject to separate analysis. Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008).

Regarding the "willful" prong, we have stated:

> The willful injury requirement speaks to the state of mind necessary for nondischargeability. An exacting requirement, it is satisfied when a debtor harbors either a subjective intent to harm, or a subjective belief that harm is substantially certain. The injury must be deliberate or intentional, not merely a deliberate or intentional **act** that leads to injury. Thus, debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6).

Plyam v. Precision Dev., LLC (In re Plyam), 530 B.R. 456, 463 (9th Cir. BAP 2015) (internal citations and quotation marks omitted).

In contrast, "a 'malicious' injury involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1209 (9th Cir. 2001) (citation omitted).

The Arizona state court held that the Anderson were liable to CWB under section 33-420:

> A. A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the

15

office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action.

. . .

C. A person who is named in a document which purports to create an interest in, or a lien or encumbrance against, real property and who knows that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid shall be liable to the owner or title holder for the sum of not less than one thousand dollars, or for treble actual damages, whichever is greater, and reasonable attorney fees and costs as provided in this section, if he wilfully refuses to release or correct such document of record within twenty days from the date of a written request from the owner or beneficial title holder of the real property.

Ariz. Rev. Stat. § 33-420(A), (C). Subsection (A) deals with the recordation of the document, while subsection (C) concerns the failure to remove the document.

We have previously held (in an unpublished disposition) that a finding of liability under section 33-420 satisfies the willful and malicious elements of § 523(a)(6). In Bosworth v. TEM Holdings, LLC (In re Bosworth), BAP No. AZ-11-1157-JuKiWi, 2012 WL 603715 (9th Cir. BAP Feb. 2, 2012), we considered whether a judgment against the debtors for wrongful recordation of a fraudulent power of attorney was sufficient to establish willful and malicious injury for issue preclusion purposes. We held that "the liability imposed for a knowing violation of the statute is the equivalent of an intentional injury under § 523(a)(6)" and "that the conduct proscribed by ARS § 33-420 required TEM to prove the classic elements of a malicious injury under

16

§ 523(a)(6)." 2012 WL 603715, at *6.

Bosworth is not binding precedent and is factually distinguishable. First, the Andersons claim that they filed and refused to release the lis pendens based on the advice of counsel; the debtor in Bosworth made no such claim. Second, the state court in Bosworth found that the debtors knew their filing was improper; the Bosworth panel declined to address the question whether issue preclusion would apply if the state court had found that the debtors only "ha[d] reason to know" that the filing was improper. Id. at *6 n.10. In this case, as far as we can tell from the record on appeal, the state court did not explicitly find that the Andersons knew (rather than had reason to know) that the lis pendens were improper. Third, Arizona law provides that courts have discretion to decline to apply issue preclusion in exceptional circumstances, even when all of the minimum requirements are met. See Hullett, 204 Ariz. at 298, 63 P.3d at 1035. So the bankruptcy court was not compelled to apply issue preclusion in any event.

Therefore, the bankruptcy court did not abuse its discretion in declining to give issue preclusive effect to the state court Judgment as to the Andersons' scienter.

**B.    The bankruptcy court's consideration of the effect of advice of counsel on the Andersons' scienter was not clear error.**

CWB argues that the bankruptcy court erred in finding that the Andersons relied on the advice of their counsel when they refused to release the lis pendens. We conclude that the bankruptcy court did not clearly err in finding that the Andersons lacked the necessary scienter under § 523(a)(6).

17

In the context of bankruptcy and dischargeability, the Ninth Circuit has stated:

> It is true that "[g]enerally, a debtor who acts in reliance on the advice of his attorney lacks the intent required to deny him a discharge of his debts." That reliance, however, must be "in good faith." This court has held that the advice of counsel claim is not a separate defense, but rather "a circumstance indicating good faith which the trier of fact is entitled to consider on the issue of fraudulent intent."

Maring v. PG Alaska Crab Inv. Co. LLC (In re Maring), 338 F. App'x 655, 658 (9th Cir. 2009) (internal citations and emphasis omitted). "[T]he debtor's reliance must be in good faith." First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339, 1343 (9th Cir. 1986) (internal citations omitted). The defendant has the burden of proving the requisite elements of advice of counsel. See Bisno v. United States, 299 F.2d 711, 720 (9th Cir. 1961) (declining to give an advice of counsel instruction when the defendant did not testify and establish each element); Stephens v. Stinson, 292 F.2d 838, 838 (9th Cir. 1961) ("Of course, it is usually a question of fact whether clients implicitly relied on advice of counsel. . . . And, clearly, here the burden of proof shifted to the bankrupts.").

In other words, advice of counsel can negate the mental state required by § 523(a)(6) only if the debtor establishes that counsel actually gave advice and that the debtor acted in good faith reliance on that advice.

In the present case, the bankruptcy court found that Mr. Anderson relied on the advice of Mr. Wilenchik and his associate when he refused to remove the lis pendens after the state court ordered the Andersons to do so within ten days of the

18

April 1, 2008 judgment. The bankruptcy court recognized that the evidence on this point was thin. Mr. Wilenchik testified that he could not remember specifically advising Mr. Anderson not to release the lis pendens, but he would not have released it, regardless of what the Andersons instructed him to do, because the judgment was not final. The bankruptcy court did not agree with Mr. Wilenchik's legal analysis, but it nevertheless found his testimony credible and determined that Mr. Wilenchik or his associate must have communicated that advice to Mr. Anderson.

Although other judges might reach the opposite conclusion on the same or similar facts, we cannot say that the bankruptcy court clearly erred. See Anderson, 470 U.S. at 573 (requiring "the definite and firm conviction that a mistake has been committed"). If the bankruptcy court is faced with multiple plausible views of the evidence, its choice among them cannot be clear error. See Elliott, 322 F.3d at 714. There was evidence to support the bankruptcy court's inference that Mr. Wilenchik or his associate did advise Mr. Anderson not to remove the lis pendens.

CWB argues that the Andersons could not have relied on this advice in good faith, because Mr. Anderson was a sophisticated businessman and knew he should not defy a court order. But the bankruptcy court cited the correct legal standard and carefully weighed the evidence. It heard testimony that Mr. Anderson relied on the legal advice of Mr. Wilenchik (and his prior attorneys), and Mr. Wilenchik held a very strong belief (correct or not) that he did not need to release the lis pendens. It was not clear error for the court to conclude that the Andersons

19

relied on the advice in good faith.

CWB argues that the bankruptcy court erred because the Andersons could not have acted on the advice of counsel when they initially filed the lis pendens in 2006 and 2007 and repeatedly refused to release them. Specifically, CWB twice demanded that the Andersons remove the lis pendens in February 2006 and May 2007, and the Andersons rejected or ignored both demands. Both of these instances predate Mr. Wilenchik's representation of the Andersons, so he could not have advised the Andersons to decline CWB's written requests. Although the bankruptcy court did not make any explicit findings as to advice by any attorney other than Mr. Wilenchik, it took evidence concerning Mr. Anderson's pre-2008 interaction with counsel and their litigation decisions.[5] The court could have logically concluded that the Andersons' actions were pursuant to counsels' advice. We cannot say that the bankruptcy court clearly erred.

Although we may not have made the same findings as the bankruptcy court, we note that the bankruptcy court carefully considered all of the evidence, extensively examined the witnesses itself, and made logical inferences from the evidence. We must defer to the court's factual findings.

**CONCLUSION**

For the foregoing reasons, we AFFIRM.

---

[5] Mr. Anderson testified that it was the idea of his then-attorney, E.J. Peskind, to file the 2006 lis pendens. He also testified that his attorneys never advised him to release the lis pendens.

20